THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY KIDD, Appellant.

First Department, September 11, 1980

## APPEARANCES OF COUNSEL

*Nancy S. Hobbs* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Laurence J. Lebowitz* of counsel *(Billie Manning* with him on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

SILVERMAN, J.

Defendant appeals from a judgment of the Supreme Court, Bronx County, convicting him, after jury trial, of robbery in

the second degree, and sentencing him thereon to an indeterminate term of imprisonment of three to nine years.

The robbery falls into a depressingly familiar pattern—a robbery of a woman in the hallway of her apartment house by two unknown men, one of them alleged to be defendant.

This is a one-witness identification case. The complaining witness saw the defendant on the street two days after the robbery and recognized and identified him as one of the robbers on that occasion. Her opportunity to observe the robbers, and particularly the one whom she identified as the defendant, while somewhat fleeting, was legally adequate. The evidence of guilt was thus legally sufficient.

But there are seriously troublesome aspects of the case. There are many inconsistencies with respect to the identification and the police record that was made as to the ability of complainant to identify the defendant at the time. The defendant, as we said, was recognized on the street by the complaining witness two days after the incident; he remained where he was in the street until the police picked him up although the complaining witness had obviously and noticeably stopped to take a close look at him. There was alibi evidence. The defendant's previous record is extremely minor and equivocal, if not insignificant. He has a relatively stable family relationship (although not legally married to the woman he is living with). He was working on a job which required him to get up very early in the morning so that it made it unlikely that he would leave his home at midnight in the middle of his usual sleep time to go out and commit this crime. The defendant also has a history of institutionalization as mentally retarded.

We are clear that the evidence is *legally* sufficient; and we cannot say that the verdict is against the weight of the evidence in the accepted legal sense. We recognize that the determination of guilt is for the jury, which has not only the legal responsibility to do this, but has the advantage of seeing and hearing the witnesses, which we have not.

Nevertheless, we are left with a disturbing feeling of a grave risk that an innocent man has been convicted. What then are our powers in such a case?

We are authorized by statute to reverse or modify a judgment of conviction "[a]s a matter of discretion in the interest of justice" (CPL 470.15, subd 3, par [c]). While examples of this power are given in the statute, it is expressly stated that

such determinations are "not limited" to the examples given (CPL 470.15, subd 6).

No doubt our powers of review "in the interest of justice" are extremely broad. On the other hand, we must guard against being capricious and whimsical, affirming when we feel like it, and reversing when we feel like it. A Judge "is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness" (Cardozo, Selected Writings, Nature of the Judicial Process, p 164, quoted in *People v Shepard,* 50 NY2d 640, 646). But we think we do not overstep the line when we exercise our "interest of justice" powers on the basis of so fundamental a consideration as guilt or innocence.

We note that the corresponding English statute permits the Court of Appeal, Criminal Division, to quash a conviction "if they think * * * that the verdict of the jury should be set aside on the ground that under all the circumstances of the case it is unsafe or unsatisfactory" (Criminal Appeal Act 1968, § 2, subd [1], par [a]; *Regina v Cooper* [1969], 1 QB 267, 1 All ER 32; Meador, Criminal Appeals, p 90; Thompson and Wollaston, Court of Appeal, Criminal Division, pp 119-20).

In *People v Ramos* (33 AD2d 344) defendant was convicted, by jury verdict, of robbery in the first degree while armed with a dangerous weapon. Under the statute as it then read, a prison sentence was mandated. However, the trial court (p 345) being "of the firm opinion" that defendant was innocent imposed a suspended sentence. A CPLR article 78 proceeding was brought to annul that suspension; the suspension was annulled and the matter was remanded for resentence. The Trial Judge thereupon, reiterating his view that the defendant was innocent, imposed a sentence in accordance with the statute. On appeal, this court reversed and ordered a new trial saying (pp 347-348):

"Certainly, we may assume that, for reasons best known to himself, the Trial Judge was of the impression that the identification testimony of Mrs. Quinones [the complaining witness] was not entirely reliable. On the basis of the record, Mrs. Quinones could have been mistaken in her identification of the defendant as the robber. If, by reason of the demeanor of the witness, a lack of certainty or inconsistencies in her testimony or other factors affecting the reliability of her testimony, the Trial Judge was firmly persuaded that there was a reasonable and proper basis for discrediting Mrs. Quinones' testimony, then, he should have set aside the verdict of

guilty and directed a new trial and, in this connection, the grounds for his action should have been stated.

"In any event, as presented to us on this appeal, we have an unsatisfactory record. We are unable to determine whether or not the Trial Judge has failed in his responsibilities. The evidence of the defendant's guilt is not so clear that we may reject out of hand the Trial Judge's firmly expressed opinion of the defendant's innocence. On this basis, we should determine the appeal in a manner dictated by the interests of justice. This court is expressly empowered to set aside the verdict of guilty and order a new trial in any case where 'justice requires a new trial' (Code Crim. Pro., § 527). Thereby, there is vested in this court a broad and discretionary power to be exercised in accordance with the conscience of the court and with due regard to the interests of the defendant and those of society. Although our ultimate concern should be the interests of justice in this particular case, our responsibilities also include a duty to correct any situation which casts a doubt upon the proper functioning of the courts in the administration of justice. Here, the unexplained inconsistency between the verdict of guilty and the trial court's conclusion of innocence creates such a doubt. Such doubt is accentuated by the improper implication from the court's statement to the effect that the defendant would have a suitable remedy in an application to the Governor. If the evidence of guilt were clear and convincing we could remove the doubt by proper statements in an affirmance. But, in all the circumstances of this case, we of the majority conclude that 'justice requires' a new trial to resolve the question of whether the defendant is guilty or innocent of the crime charged."

In the present case, although we cannot say the verdict is against the weight of the evidence in the accepted legal sense, on balance we are left with a very disturbing feeling that guilt has not been satisfactorily established; that there is a grave risk that an innocent man has been convicted; and that we should therefore not let this conviction stand.

The present statute, unlike the law as it stood at the time of the *Ramos* case *(supra),* requires that at least on a reversal as against the weight of the evidence, this court must dismiss the accusatory instrument. (CPL 470.20, subd 5.) The "theory of the rule is that the People, having had full opportunity to prove their case at trial and, having failed to do so, should not

be accorded another chance." (Denzer, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 470.20, p 609.)

We do not say that this verdict is against the weight of the evidence, but there appears not the slightest likelihood that there will be any new evidence on a new trial, and, therefore, there seems to be no point in ordering a new trial. Consistently with the theory of the statutory rule applicable to reversals as against the weight of the evidence, we think the appropriate remedy in the interest of justice is to reverse and dismiss the indictment.

The judgment, Supreme Court, Bronx County (RAMOS, J.), rendered April 11, 1979, convicting defendant, after a jury trial, of robbery in the second degree (Penal Law, § 160.10), and sentencing him thereon to an indeterminate term of imprisonment of three to nine years, should be reversed, on the facts, and as a matter of discretion in the interest of justice, and the indictment should be dismissed.

Ross, J. P., MARKEWICH, BLOOM and CARRO, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered April 11, 1979, reversed, on the facts, and as a matter of discretion in the interest of justice, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of a copy of this court's order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required. The order of this court entered on August 14, 1980, is vacated and the memorandum decision filed therewith recalled.