THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v STEPHEN MOSES, Defendant-Respondent.

First Department, January 20, 1983

**APPEARANCES OF COUNSEL**

*Amyjane Rettew* of counsel (*Mark Dwyer* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

*Mark S. Adler* of counsel (*Adler & Stavros,* attorneys), for defendant-respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

The People appeal from Trial Term's order setting aside a verdict of guilt and dismissing the indictment. The issue is whether sufficient independent evidence was presented to corroborate the accomplice testimony upon which the verdict was based. Although the issue is close we find that the consciousness of guilt evinced by defendant when he presented a false alibi, recorded on video tape by the police during the investigation of the homicide, constitutes evidence "tending to connect the defendant with the commission of [the] offense" (CPL 60.22, subd 1), so as to corroborate the testimony of Lynette Baker, the accomplice. Absent the false alibi, however, the record is barren of any corroborative evidence which would support the verdict.

The trial testimony indicated that the victim, a serviceman home on Christmas holiday, had been robbed and brutally murdered in the early morning hours of December 21, 1978. He was found with his hands tied behind his back, with numerous stab wounds, and with burns over most of his body. Ten of the travelers checks he had purchased at Fort Leonard Wood, Missouri, were forged and cashed during the week following his death. Only Baker's testimony implicated defendant in the crime.

Apparently the victim, who had flown home earlier that evening, stopped at a bar just a few blocks from his mother's apartment, where he met some of those who were, within a matter of hours, to rob and murder him. Baker testified that eventually she, the victim, defendant, Cornell Alston and Jerome McEachin all went to a vacant apartment in a nearby building where they continued drinking. Baker testified further that defendant initiated the robbery and that Alston, aided by defendant, killed the victim because he knew their names. McEachin was not indicted, and Baker testified in exchange for a promise of leniency. Alston and defendant were tried jointly.

The jury convicted both defendant and Alston of murder in the second degree and robbery in the third degree. Trial Term set aside the verdict and dismissed the indictment as to defendant for lack of corroboration of the accomplice's testimony. Additionally the court, expressing "grave concern" about Baker's credibility and citing *People v Kidd* (76 AD2d 665, application for lv to app dsmd 51 NY2d 882), also invoked the interests of justice as a further ground for dismissal. We do not believe that the evidence was so weak as to justify a dismissal on the latter ground, nor does defendant even seriously urge this point in support of the dismissal. Thus, the only issue is whether the mandate of CPL 60.22 (subd 1) requiring corroborative evidence of an accomplice's testimony was satisfied.

The People cite several portions of the record which they claim corroborate Baker's testimony. Margaret Jennings, a tenant across the hall from the apartment where the murder occurred, testified that sometime around 11:00 P.M. she had seen defendant leaving the same apartment. Yet, the record contains unchallenged evidence that the victim

was alive and well at approximately 3:00 A.M. At that time, according to Baker, he was conversing on the stoop of the building in which he was killed with her, defendant, Alston and McEachin. Thus, as the People concede, at least three and one-half hours elapsed from the time defendant was observed outside the apartment and the time Baker said the victim left the stoop with Alston to go upstairs. Such a protracted interval of time renders innocuous defendant's earlier presence outside the apartment, since the record is barren of any evidence that at 11:00 P.M. the victim had even met Baker and her cohort. Thus, at that time, he could not have been targeted by them for robbery.

Moreover, the vacant apartment, according to Jennings, was often used by strangers. Indeed, Baker's own testimony established that defendant had used the apartment on occasion. In such circumstances, his use of the apartment on a rainy, cold and damp night at least three and one-half hours before the murder does not tend to connect him to the crime. Mere presence in a building alone will not suffice as corroboration unless there is no hypothesis for that presence other than criminal purpose. (See *People v Hudson,* 51 NY2d 233, 234.) Not without significance is Jennings' failure to see defendant later that night when she observed a group, including Alston, who was holding the victim's duffel bag, standing in the hallway outside the vacant apartment.

On oral argument the People urged that Jennings saw defendant lock the door with a key when he left the apartment at 11:00 P.M. Notwithstanding whatever probative value such evidence might have, it does not exist in the record. Jennings merely answered "yes" when asked on cross-examination if she had testified at a pretrial hearing that she had seen defendant coming out of the apartment and locking the door with a key. This testimony was elicited by defense counsel to impeach the witness by showing a prior contradictory statement, and does "not constitute * * * 'evidence in chief' of the facts stated." (*Matter of Roge v Valentine,* 280 NY 268, 276.) Indeed, Jennings clearly equivocated in answering counsel's previous question as to whether defendant had locked the door with a key. Her answer was, "Well, it seems as though, you

know, like if you turn around to close the door, door should lock."

Nor does defendant's statement to the police that he went to Alexander's Department Store in The Bronx the day after the murder corroborate Baker's testimony that he participated in the crime, since Baker testified that Alston took the travelers checks from defendant after the murder and purchased a snorkel jacket and turtle neck sweater at Alexander's with some of them. (Four checks bearing forged signatures were cashed at a branch of Alexander's.) Consistent with Baker's testimony that Alston took the checks, Alston was identified by another witness as having cashed three more of them at a grocery store a few days after Christmas.

In *People v Dixon* (231 NY 111, 116) the Court of Appeals addressed itself to the requirement that accomplice testimony be corroborated, and noted: "The 'other evidence' must be such 'as tends to connect defendant with the commission of the crime.' The corroborative evidence need not show the commission of the crime; it need not show that defendant was connected with the commission of the crime * * * It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth. The corroboration is not restricted to any particular point. Its connection with defendant's own statements and denials should be considered."

Applying this standard we find that the only evidence corroborating Baker's testimony was defendant's offer of a false alibi. In his video taped statement he denied being present in the apartment, or even in Manhattan, on the night of the homicide. Yet, Jennings testified that at about 11:00 P.M. she saw him coming out of the apartment. While, as already noted, his presence outside the apartment several hours before the murder is not, as a matter of law, corroborative of Baker's testimony, his presence at the apartment that night directly contradicts his statement that he was not in Manhattan, and betrays a "consciousness of guilt". Courts have consistently held that false stories evincing a consciousness of guilt constitute evidence corroborative of accomplice testimony. (See *People v*

*Ruberto,* 10 NY2d 428, 430; *People v Leyra,* 1 NY2d 199, 208.)

In *People v Deitsch* (237 NY 300) the defendant was charged with the rape of a minor. A third party observed him lingering at her house a few minutes before the victim said he forced his way into the house and assaulted her. The defendant offered an alibi at trial. The court found that the defendant's attempt to establish a false alibi justified the inference that his presence on the street at the time was a guilty presence, and concluded that the victim's story was sufficiently corroborated.

In *Deitsch (supra)* the court recounted the facts of *People v Gorski* (236 NY 673.) In *Gorski* a defendant was implicated in a murder by his accomplices. Gorski, like Deitsch, denied presence at the scene, but again a third party saw the defendant near the crime scene. The court found that Gorski's false denial of his presence in the neighborhood sufficiently corroborated his accomplices' testimony.

That defendant's denial that he was present in Manhattan on the night of the murder is susceptible of more than one interpretation does not render it legally insufficient. The independent corroborative evidence need not "exclude to a moral certainty every hypothesis but that of wrongdoing." (*People v Daniels,* 37 NY2d 624, 630, citing *People v Kohut,* 30 NY2d 183, 193-194.) Thus, the issue of the inference to be drawn was a matter for the jury, not the court.

Defendant's attempt to remove himself entirely from the Borough of Manhattan on the evening of the murder was thwarted by the testimony of Jennings, a disinterested witness, who placed him outside the apartment where the murder occurred. This deception indicated a consciousness of guilt from which a jury could find sufficient corroboration of Baker's testimony.

Accordingly, the order, Supreme Court, New York County (DONTZIN, J.), entered November 28, 1980, which, *inter alia,* set aside the verdict convicting defendant of murder in the second degree and robbery in the third degree, should be reversed, on the law, the verdict reinstated, and the matter remanded for sentence.

KUPFERMAN, J. (concurring in part and dissenting in part). The sole question on this appeal is whether the People offered, as a matter of law, sufficient trial proof to satisfy the statutory requirement that accomplice testimony be corroborated. The statute in point, CPL 60.22 (subd 1) provides: "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence *tending to* connect the defendant with the commission of such offense" (emphasis added).

On December 20, 1978, Private, United States Army, Arthur K. Watts returned to New York City from basic training to spend Christmas with his family. He stopped at Small's Bar at 145th Street and Eighth Avenue, a few blocks from his family's home. At the bar, and later in a vacant apartment in a building on that same block, Watts met Cornell Alston, Lynette Baker, Jerome McEachin, and Stephen Moses. His body was found the next morning in that vacant apartment with multiple stab wounds and scarred from having been set afire with a flammable liquid.

In return for a promise of leniency, Lynette Baker testified that she, Moses, McEachin and Alston had gone to the vacant apartment to talk and drink beer with the deceased, that Moses had initiated the robbery of Watts, and that Alston killed him because "he knew our names". Her testimony minimized both her role and the role played by McEachin. McEachin was not indicted, presumably because no independent evidence connected him to the crime.

Margaret Jennings and her son lived in the apartment across the hall from the vacant apartment where the body was found. She testified on direct examination that she saw the defendant, Stephen Moses, leaving the vacant apartment not long after 11 o'clock P.M. on the night of the murder. On cross-examination, she testified that she saw Moses lock the door of the vacant apartment with a key. She picked Moses out of a police lineup and identified him in court. She also identified Moses' codefendant, Cornell Alston, and testified that she saw him in the hallway outside her apartment at approximately 1 o'clock A.M., carrying an army duffel bag.

The decision setting aside the verdict stated that establishing Moses' presence at the scene of the crime was insufficient corroboration as a matter of law because of the time lapse between when the independent witness saw Moses there and when the murder occurred. It is noteworthy that the medical testimony failed to adduce the time of death. Thus, when the actual robbery and murder occurred, and the elapsed time between Moses' presence and the murder, were questions for the jury to determine from its assessment of the credibility of the witnesses.

Nonetheless, the independent testimony establishing defendant Moses' presence in the vacant apartment is significant for two reasons: (1) It contradicts the video taped statement made by defendant Moses that he was not in Manhattan that night, thus providing corroboration because of a false alibi. (See *People v Ruberto,* 10 NY2d 428; *People v Leyra,* 1 NY2d 199, 208; *People v Caprio,* 25 AD2d 145, 149-150.) (2) The testimony establishes Moses' presence at the scene, which tends to corroborate the accomplice testimony. (See *People v Brown,* 30 AD2d 279, 281; *People v Ross,* 68 AD2d 962; *People v Kress,* 284 NY 452.)

The Trial Judge applied an erroneously high legal standard in assessing the legal sufficiency of the corroborative evidence for the purposes of the motion to set aside the jury verdict pursuant to CPL 330.30 (subd 1). The decision singled out items of corroborative evidence as insufficient "standing alone" to tend to connect the defendant to the commission of the crime. Corroborative evidence should be viewed cumulatively, in light of the entire record. (*People v Glasper,* 52 NY2d 970.)

It was also error to discount the presence of the defendant in the vacant apartment because it might be possible that his presence there could have been for purposes unconnected with the commission of this crime. When circumstantial evidence is used to corroborate accomplice testimony, it is not held to the same stringent standard as when it is used to prove guilt without other evidence. That is to say, corroboration need not lead exclusively to the inference of the defendant's guilt. (See *People v Morhouse,* 21 NY2d 66, 74.) The corroborative evidence need not be completely inconsistent with the theory of defendant's

innocence. (*People v Mayhew,* 150 NY 346.) In any event, no explanation was presented. (See *People v Hudson,* 51 NY2d 233, 240, n.)

All corroborative evidence of accomplice testimony is required to do is tend to connect the defendant with the commission of the crime in such a way that the jury may reasonably be satisfied that the accomplice is telling the truth. (*People v Arce,* 42 NY2d 179.) "Matters in themselves of seeming indifference * * * may so harmonize with the accomplice's narrative as to have a tendency to furnish the necessary connection between defendant and the crime." (*People v Dixon,* 231 NY 111, 116-117.)

A summary of the evidence presented to the jury tending to connect Moses with the commission of the crime demonstrates both the sufficiency of the corroboration of the accomplice's testimony and Moses' complicity in the robbery and murder.

In addition to Margaret Jennings' testimony, her son, Melvin Herman, also took the stand. He confirmed his mother's report that she sent him to the store at approximately 1 o'clock A.M., and stated that he saw two men standing on the stoop of the building who matched the descriptions of Moses and Alston. Though he was unable to identify the defendants, he testified that he did not see Jerome McEachin, who was known to Herman, and who was an unindicted alleged participant in this crime.

James Greer also testified for the People. He stated that he met Lynette Baker at Small's Bar by prearrangement at approximately 1 o'clock A.M. on the night of the murder. He testified that he saw the deceased in the bar, but at no time that night did he see Moses, who was known to him. This is consistent and tends to harmonize with Lynette Baker's testimony. She stated that Moses was hiding from Greer since both were romantically involved with her.

The video taped statement made by defendant Moses in the investigative stage of this case was shown to the jury. At the time of this statement, neither defendant nor his accomplice had been indicted, and no promise of leniency or immunity had been made to either. Thus, there was less motive to color testimony than would be present when an

accomplice testifies under a promise of immunity. (See *People v Cona,* 49 NY2d 26, 35-36.)

The defendant stated on video tape that he was not in Manhattan that night, but in The Bronx. He volunteered that he had gone out to an Alexander's Department Store in The Bronx on the day after the murder. The travelers checks stolen from the decedent were cashed at an Alexander's Department Store, although the testimony did not establish which branch or who forged the decedent's signature. This is further corroboration of Lynette Baker's testimony. She had testified that the checks were cashed at Alexander's and at Lolly's grocery store, and independent testimony verified that both these places had cashed the deceased's checks. Moses stated further that he knew Baker, Alston and McEachin, and that he was in Small's Bar earlier in December, and that he frequented that block at Eighth Avenue and 145th Street to drink and "hang out" on the street with Lynette Baker and Cornell Alston.

Inasmuch as there was sufficient corroborative evidence, viewed cumulatively in the light of the entire record, to support the jury's verdict (see *People v Glasper,* 52 NY2d, at p 972; *People v Ruberto,* 10 NY2d 428, 430; *People v Kohut,* 30 NY2d 183, 194), the conviction should be reinstated.

However, in light of the Trial Justice's expressed belief in the defendant's innocence (*People v Ramos,* 33 AD2d 344; *People v Kidd,* 76 AD2d 665), the case should be remanded for further proceedings consistent with this opinion. On remand, the court should consider whether other grounds under CPL 330.30 exist to set aside the verdict or whether a motion under CPL article 440 should be entertained.

Accordingly, the order of the Supreme Court, New York County (DONTZIN, J.), entered on November 28, 1980, which set aside, pursuant to CPL 330.30 (subd 1), the jury verdict convicting defendant Stephen Moses of murder in the second degree and robbery in the third degree, should be reversed, on the law, the motion denied, the jury verdict reinstated, and the matter remanded for further proceedings consistent with this opinion.

MURPHY, P. J. and ASCH, J., concur with SULLIVAN, J.; KUPFERMAN and ALEXANDER, JJ., concur in part and dissent in part in an opinion by KUPFERMAN, J.

Order, Supreme Court, New York County, entered on November 28, 1980, reversed, on the law, the verdict reinstated, and the matter remanded for sentence.