■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DARREN DAVIS, Respondent. — Order of the Supreme Court, Bronx County (Schackman, J.), entered on January 22, 1982, dismissing the indictment herein pursuant to CPL 30.30 modified to the extent of dismissing the indictment pursuant to CPL 470.15 on the facts and as a matter of discretion in the interests of justice and otherwise affirmed. This case presents for review by this court the issue of whether the refusal by the District Attorney to honor an agreement, freely and voluntarily reached in open court with a defendant and his counsel, justifies the exercise of our interest of justice powers to sustain a dismissal of an indictment. Defendant was indicted by a Bronx County Grand Jury on July 8, 1981, accused of the crimes of robbery, first degree, robbery, second degree, assault, second degree and criminal possession of a weapon, fourth degree. He is alleged to have acted in concert with one Steve Springle on June 21, 1981, in forcibly robbing Kevin Miller of a gold chain at Lehman High School and using or threatening the use of a stick in the course of the robbery. It also is alleged that he caused physical injury to Kevin Miller in the process. Defendant testified before the Grand Jury, pursuant to CPL 190.50, and denied his involvement in the crimes. During the course of his testimony he asserted that he had taken and "passed" a lie detector (polygraph) test. He attempted to hand copies of the results of the test to the Grand Jury, but was stopped and prevented from doing so by the Assistant District Attorney. Thereafter, defendant apparently made application to the Judge in charge of the Grand Jury for an order compelling the District Attorney to permit the results of the polygraph examination to be presented to the Grand Jury. After some discussion on the matter, a good part of which (indeed crucial parts, apparently), was "off the record" the proceedings were adjourned for a week. The Judge stated on the record however: "Let the record indicate that apparently as to defendant Davis there has been an agreement between the District Attorney's office and the defense counsel that the District Attorney's office will administer a lie detector test and as a result of the lie detector test, a determination will be made." The case was adjourned to July 8. On that date, the Assistant District Attorney, in response to defense counsel's request that the stipulation be honored, informed the court that she had been "overruled" by her office, and that they would not administer a polygraph test to the defendant. The Judge presiding (not the one before whom the parties had appeared previously) ruled that the results of the test previously taken by the defendant were not admissible before the Grand Jury and directed that a vote be taken by the Grand Jury as to whether or not to return a true bill. In the course of so ruling, the Judge observed: "if a true bill is voted I would strongly suggest that your expert permit a lie detector test be given to this defendant in the interest of justice * * * the District Attorney as the chief law enforcement agent in this county I am sure is aware of his and her obligations to the citizens of this county and city and therefore will do everything within its power to see that justice is done in this case and if in fact the lie detector testimony of your expert from New York County and her expert here in Bronx County would indicate that there is reasonable doubt, I am certain that will be brought to the attention of the sitting justice in the Supreme Court as in the past where results of lie detector tests have been presented to a trial judge and acquittals and dismissals have resulted." The presentation was completed and a true bill voted that day. Thereafter, following the defendant's arraignment, he moved to dismiss the indictment in the interests of justice, based upon the District Attorney's refusal to honor the agreement to administer the polygraph test. The matter apparently was adjourned for the People's response to the motion, which was not forthcoming on the adjourned date, necessitating a further adjournment. On the next adjourned date the People still had not responded to

the motion, though they continued to steadfastly refuse to honor the agreement reached earlier. During the course of the colloquy between the Justice presiding and the attorneys, the court concluded that he could not dismiss the indictment because of the breach of the agreement, but "adjourn[ed] [the] motion to give the People time to submit this defendant to a polygraph examination and you are directed to do so because you stipulated to do it and Paul Gentile can't overrule that". The court further indicated that if the examination had not been administered by the next adjourned date, he "would entertain an order to show cause to dismiss for prosecutorial misconduct". The District Attorney's office continued in its refusal to honor its agreement and administer the polygraph test. On the next adjourned date the court determined that it would not dismiss the indictment for prosecutorial misconduct (apparently no motion for that relief had been made), but rather would not allow the case to go to trial and have the time "run against [the People] includible from the date of arrest until you give him the lie detector test." The court "disposed" of defendant's motion to dismiss the indictment in the interests of justice as follows: "For failure to abide by the stipulation, the time shall be includible from the date of arrest, June 12, 1981, until the lie detector test is given". In response to a suggestion by the District Attorney that the agreement to administer the polygraph examination to the defendant had been extracted from the original assistant under duress, the court offered to entertain an application to set the agreement aside if duress was established — no such application was made, nor was a polygraph examination administered to the defendant. Thereafter, the District Attorney's office, through various assistants, steadfastly refused to honor the commitment made to defense counsel and the court by the original assistant. The case was eventually transferred to another Justice who, feeling himself bound by the prior order, dismissed the indictment on December 11, 1981, pursuant to CPL 30.30. What is involved in this matter is not prosecutorial discretion as to who will or will not be prosecuted; nor is it a matter of the admissibility or inadmissibility of the results of polygraph examinations into evidence before a Grand Jury or petit jury. Rather what is involved is the obligation of the District Attorney to deal in good faith with the court and with defendants and to honor agreements freely and voluntarily reached in open court. As the dissent appropriately observes, the District Attorney should have abided by the agreement since it is clear that the assistant, representing the People, who incidentally was a deputy bureau chief, had full power and authority to bind her office to the agreement, absent some reservation, not here present, in respect to approval of the agreement by her superiors. When confronted with a similar, but factually somewhat distinguishable situation, Justice Bloustein observed, in dismissing a homicide indictment, "this court believes that a stipulation freely entered into, as it was in the instant case has a moral and ethical significance. Stipulations affecting the rights and obligations of the parties to a lawsuit — civil or criminal — are not to be entered into or to be treated lightly * * * Attorneys who this court regards as morally and ethically motivated should rely and if necessary depend on a stipulation. The District Attorney is no less obligated to comply with the terms of a stipulation to which he is a party. In the opinion of the court the stipulation between the parties is a binding agreement, a contract between the District Attorney and counsel for defendant as well as the defendant whose terms must be enforced. In the interests of justice, a dismissal in this case must be effected even though there may be no other basis for dismissal in law." (*People v Prado,* 81 Misc 2d 710, 712.) We are not able to conclude, as do our dissenting brothers, that the defendant has not been prejudiced by the intransigence of the District Attorney. We note from

the Grand Jury minutes that insofar as this defendant's complicity in the chain snatch alleged to have occurred at Lehman High School is concerned, this essentially is a one-witness case, involving sharply conflicting testimony concerning the circumstances under which the identification was made and indeed, whether or not there was an identification of this defendant. And while polygraph test results may not be competent evidence for trial purposes, they nonetheless may be important, and of valuable assistance to the People and to the court in effecting just and fair dispositions of criminal matters. Considering the totality of the circumstances confronting the court below, we conclude that it was improvident for the Judge to have "disposed" of the defendant's motion to dismiss the indictment in the interests of justice in the manner employed. That motion should have been granted since the "stipulation between the parties [was] a binding agreement, a contract between the District Attorney and counsel for defendant as well as the defendant whose terms must be enforced". (*People v Prado, supra*, p 712.) We do so now in the exercise of our "powers of review 'in the interest of justice' [which] are extremely broad". (*People v Kidd*, 76 AD2d 665, 667.) And while we are mindful that "we must guard against being capricious and whimsical * * * we think we do not overstep the line when we exercise our 'interest of justice' powers on the basis of so fundamental a consideration" as the integrity of firm agreements made in open court between counsel and the court (p 667). Concur — Bloom, Fein and Alexander, JJ.

Sullivan, J. P., and Silverman, J., dissent in a memorandum by Silverman, J., as follows: We would reverse the order appealed from and reinstate the indictment. The order appealed from dismisses the indictment "pursuant to Criminal Procedure Law section 30.30 on constraint of Justice Cohen's order of September 25, 1981." Justice Cohen's order provided that "[f]or failure to abide by the stipulation the time shall be included from the date of arrest (6/12/81) until the lie detector test is given (nothing need be done with the test results) the case against this defendant will be dismissed without further order of this court on 12/12/81 pursuant to CPL 30.30 and the People are precluded from prosecuting this case [illegible] until the stipulation is complied with." (1) It was clearly error to dismiss under CPL 30.30, which only authorizes dismissal "where the people are not ready for trial" within six months (CPL 30.30, subd 1, par [a]). Long before the six months, the People consistently stated that they were ready for trial. We do not think that the court has any authority to say that the People are not ready for trial when the People say they are, and are prepared to accept the responsibility incident to such an answer. The strictures of CPL 30.30 are not a sanction available to be used at the discretion of the trial court to punish the District Attorney for unrelated conduct that the court disapproves of or to compel the District Attorney to engage in particular conduct other than answering ready for trial. Yet that is in effect how Justice Cohen used CPL 30.30, resulting in the order appealed from. This use of the statute is particularly inappropriate here where Justice Cohen's order explicitly provided that "nothing need be done with the test results," so that the absence of those test results could not have interfered with either side's readiness for trial. (2) No Judge has determined that the indictment should be dismissed for prosecutorial misconduct. (The closest that any Judge has come to this in this case is Justice Cohen's order directing that the People would be marked not ready for purposes of section 30.30 unless and until the People administered a polygraph test to the defendant, notwithstanding the People's assertion that they were ready for trial. Justice Cohen thereafter recused himself. Thereupon he was no longer available to reconsider his order; and the other Justice to whom the matter came considered that he had no power to

reconsider Justice Cohen's order. But even Justice Cohen, before he recused himself, never held that the indictment should be dismissed for prosecutorial misconduct.) (3) The majority apparently feels that dismissal is required in the interest of justice because, in their view, to some extent the defendant suffered from a contest of wills or a power struggle between the District Attorney and a Judge. No doubt there was a sharp disagreement between the Judge and the District Attorney, differing however only in degree from a simple case of a Judge disagreeing with and ruling against one of the lawyers before him and in favor of the contention of the other lawyer. The defendant was not without responsibility for the procedural mishaps which led to the order appealed from. The whole dispute started because the defendant, testifying before the Grand Jury sought the receipt in evidence before the Grand Jury of inadmissible evidence, the results of a polygraph test, which he stated he had passed. When the District Attorney refused to permit that evidence to be received by the Grand Jury, the defendant persisted, asking for a ruling allowing the admission of such inadmissible evidence. This application resulted in an agreement that the District Attorney would cause such a polygraph test to be administered but no agreement as to what effect that would have. When superiors in the District Attorney's office overruled the Assistant District Attorney and decided not to administer the polygraph test, the defendant made a motion to dismiss the indictment. This motion resulted in Justice Cohen's direction that the time would be includable for purposes of CPL 30.30 until the People administered the test, finally leading to the order appealed from. It is unfortunate that 17 months have elapsed since the criminal incident. But a party, who insists on his own particular rules of evidence and that a particular procedure to which he is not entitled be followed, has no standing to complain that he has been impermissibly prejudiced by the delays incident to obtaining a final adjudication overruling his contentions. Defendant is in no different position from any litigant in whose favor the trial court has made an erroneous ruling which is then corrected on appeal; he loses the benefit of that erroneous ruling. Thus in the procedural posture of this case (a) the dismissal pursuant to CPL 30.30 was clearly erroneous, (b) the question of dismissal for claimed prosecutorial misconduct is not before us, and (c) there is no injustice in applying to this defendant the correct rule of law. However, we think some comment should be made with respect to the claimed agreement with the District Attorney and its repudiation by the District Attorney. During the course of the Grand Jury proceedings defendant apparently made an application to the Justice presiding, Justice Gorfinkel, for a ruling with respect to the admissibility of the results of the polygraph test. There was apparently some off-the-record discussion; the Judge said: "Let the record indicate that apparently as to the Defendant Davis there has been an agreement between the District Attorney's Office and the Defense Counsel that the District Attorney's Office will administer a lie detector test and as a result of the lie detector test a determination will be made". The polygraph (lie detector) test was not held. Instead, defendant's attorney was informed that someone, presumably of higher authority in the District Attorney's office, had overruled the Assistant District Attorney and decided that the District Attorney's office would not administer a lie detector test to the defendant. And in fact, no polygraph test ever was administered by the District Attorney's office to defendant. The District Attorney's representative said she considered what had happened before not to be "a deal, arrangement or contract but something I was trying to work out for his client." However, the record uses the word "agreement." In principle, an agreement made by an Assistant District Attorney in open court with the attorney for defendant is not subject to being overruled by a superior

in the District Attorney's office, unless the agreement is expressly made subject to the approval of someone else. So far as the court is concerned, an Assistant District Attorney representing the People in a court *is* the District Attorney, with all the powers of the District Attorney, and he has full apparent authority to bind the District Attorney. (Cf. *Matter of Byrnes v Windels,* 265 NY 403, 409.) The District Attorney should have abided by that agreement. This said, it does not at all follow that the failure of the District Attorney to abide by the agreement should result in dismissal of the indictment. (This of course does not exclude the possibility of some direction by the court to the District Attorney to abide by his agreement.) Defendant was in no way prejudiced by the District Attorney's withdrawal from the stipulation. Defendant did not change his position in any way in reliance upon that agreement. The agreement arose in the course of an application by the defendant for a ruling on the admissibility of the polygraph test before the Grand Jury. When the District Attorney repudiated the agreement, the Grand Jury had still not completed its work on this case (nor indeed is it clear that it had done anything further on this case). Thereupon a ruling was sought and obtained from Justice Enten as to the admissibility of the result of the polygraph test before the Grand Jury. Justice Enten ruled that it was not admissible and directed that the Grand Jury vote on the proposed indictment. Thus defendant was in exactly the same position as he would have been if there had been no agreement and Justice Gorfinkel had ruled on his application with respect to the admissibility of the result of the polygraph test. We note further the almost illusory nature of the agreement. Concededly there was no agreement that the result of the polygraph test to be administered by the District Attorney would be admissible in evidence or even that the District Attorney would abide by the result of that test. All that was "agreed" beyond the administering of the test was that "as a result of the lie detector test a determination will be made." This is merely another statement of the usual understanding when the District Attorney consents to administering a polygraph test to a defendant, i.e., the test will be administered and then we will see what we will do. This is not even an agreement to agree. It is at most an agreement to think about the matter. It is established that polygraph tests are not admissible in evidence in the courts of this State. (*People v Leone,* 25 NY2d 511; *People v Tarsia,* 50 NY2d 1, 7.) With exceptions not here relevant, the same rules of evidence apply before the Grand Jury as upon a trial (CPL 190.30, subd 1), and polygraph evidence is not admissible. (*People v Frank,* 101 Misc 2d 736, conviction affd 83 AD2d 642; cf. *People v Daniels,* 102 Misc 2d 540, 553.) Thus, as a practical matter, a polygraph test is at most a device to be considered by a District Attorney, in his discretion, in the course of deciding whether to take some action. Here the District Attorney has plainly indicated, as is his right, that he does not wish to pay any attention for such purposes to such a test. So that administering it as required by the agreement would presumably be a waste of effort. Indeed, Justice Cohen's order stated that "nothing need be done with the test results." In the circumstances, the repudiation by the District Attorney of the agreement does not constitute misconduct of such gravity that a duly voted indictment by a Grand Jury for a felony should be dismissed without further inquiry. Dismissal of an indictment because of conduct by a District Attorney punishes not the District Attorney but the People. It should not be done unless the District Attorney's conduct has prejudiced the defendant's right to a fair trial. Here the only "prejudice" to the defendant is to his heretofore nebulous chance of avoiding a fair trial.