THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RONALD TAYLOR, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
LEROY ALSTON, Appellant.

First Department, January 5, 1984

APPEARANCES OF COUNSEL

*Irma B. Ascher* of counsel (*William E. Hellerstein,* attorney), for Ronald Taylor, appellant.

*Joseph I. Stone* for Leroy Alston, appellant.

*Susan Corkery* of counsel (*John Latella* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

BLOOM, J.

This somewhat bizarre robbery and burglary arose out of a debt of $150 allegedly owed by Melvin Tisdale to Miguel "Pinky" Colon. It has resulted in four convictions after trial, Colon, John "Blood" Nash, and the two defendants now before us. A fifth defendant, Michael Graham, pleaded guilty. Colon has not perfected his appeal. The conviction of Nash was affirmed by us without opinion (89 AD2d 1064). Leave to appeal was denied (57 NY2d 960, COOKE, Ch J). Graham has not appealed.

The circumstances which led to the crimes are indeed unusual. Melvin and his brother Tony had been smoking "angel dust" in Central Park in the late afternoon or early evening of July 24, 1980. Sometime in the general vicinity of 8:00 P.M. they left the park at the 110th Street and Eighth Avenue exit and proceeded south and west on foot. At 105th Street, between Columbus and Amsterdam Avenues they met Colon, who was accompanied by Taylor and a third youth. Colon demanded that Melvin pay him the money which he owed him or return the radio, the taking of which by Melvin had given rise to the debt. To emphasize that the demand was "no game" Colon produced a gun which he used to threaten Melvin. Melvin testified that he gave Colon $50, which was all the money he had. Colon then ordered both of the Tisdale brothers to strip. As they were complying with his direction, Colon, Taylor and the third youth conferred briefly and Melvin heard one of the three suggest that "If he ain't got it get it from his sister." Sharon Tisdale, the sister of Melvin and Tony, lived a short distance away, at 218 West 104th Street. The group proceeded to walk through the streets to that address. The grotesque spectacle of two grown men marching through the streets stark naked, surrounded by three others, attracted attention and, as the procession moved onward it grew in size.

When the group arrived at 218 West 104 Street they proceeded to apartment 5B, the apartment in which Sharon lived. Melvin knocked on the door and requested admittance. Sharon, however, was not at home. The group was admitted by Rita Tisdale, the Tisdales' young sister,

who had been left in charge of Sharon's three young children. Rita, immediately upon seeing the gun in Colon's hand began to scream and cry. She tried to run into the bedroom, where the two smaller children were, in order to protect them. Taylor, however, grasped her hand and held her to make certain that she did not slip away. In the general confusion which followed some onlookers entered the apartment and Melvin fled to a closet where he found and donned a pair of trousers. The group then proceeded to ransack the apartment. When they left, Melvin broke away and telephoned the police from a street phone booth. Rita also called the police.

The day following the burglary and robbery, a stereo speaker, one of the fruits of the invasion of Sharon's apartment, was returned by a woman named Darlene McGregor. Melvin testified that he had seen Darlene and Taylor together on a number of social occasions. The obvious purpose was to persuade the jury that in returning the stereo speaker Darlene had acted as the emissary of Taylor.

Taylor was identified as a participant in the affair by Melvin, who had known him for some two years, and by his sister Rita. However, the only identification of Alston was by Rita, an "educable mentally retarded" child of 12. She testified that as soon as she saw the man with the gun she became exceedingly frightened and started screaming and crying. On cross-examination she acknowledged that tears fell on the eyeglasses which she was wearing and, by consequence, the eyeglasses fogged up so that she had to remove them.

Concededly, when interviewed by the police on the evening of the crime Rita did not name Alston. At that time she asserted that only three intruders entered the apartment. Only after she had been questioned repeatedly by Sharon with various names suggested to her did she increase the number to five and include Alston among the five. This occurred some days after the crime had been committed. Melvin, who knew Alston over a period of some years, was quite definite that he did not see Alston among the group who entered the apartment. Alston, who testified on his own behalf, admitted that he was among the group

which congregated on the stoop of 218 West 104 Street when Colon, Taylor and the third unnamed youth paraded the naked Tisdale brothers past them, and was present in the vicinity of the building when Rita, Sharon and the police officers who came to investigate the crime exited from the building. However, he denied emphatically that he had accompanied the group to Sharon's apartment or that he had entered the apartment or taken anything from it.

■ ■ We think that the identification by Rita alone is much too thin a reed on which to bottom a conviction. In the case of Taylor her identification is supplemented by the direct identification by Melvin and by the actions of Darlene McGregor which, circumstantially, together with the other evidence, could reasonably lead the jury to believe that Taylor was among those who ransacked Sharon's apartment. In the case of Alston, however, the conviction must stand or fall on Rita's testimony. Despite her assertion that she had seen him selling "reefers" on 116th Street on prior occasion, and balancing that against her own physical and mental limitations at the time of the incident and the suggestive influence to which she had been subjected by Sharon in the period following the crime, and against the testimony of Melvin, we do not think there is sufficient here upon which to base a conviction of guilt "beyond a reasonable doubt". We are of the opinion that, with regard to Alston, there is so present the probability of "irreparable misidentification" (*Neil v Biggers,* 409 US 188; *Manson v Brathwaite,* 432 US 98) as to leave us with the disturbing feeling that there is "a grave risk that an innocent man [may have] been convicted" (*People v Kidd,* 76 AD2d 665, 666). Hence, as to him, we think the verdict must be set aside and the indictment dismissed.

■ Accordingly, the judgment of the Supreme Court, New York County (EDWIN TORRES, J.), rendered June 9, 1981 convicting defendant Ronald Taylor of the crimes of robbery in the first degree and burglary in the first degree should be affirmed.

■ The judgment of the Supreme Court, New York County (EDWIN TORRES, J.), rendered May 12, 1981, convicting defendant Leroy Alston of the crimes of robbery in

the first degree and burglary in the first degree should be reversed, on the law, the facts and in the interests of justice, and the indictment dismissed.

CARRO, J. P., ASCH, SILVERMAN and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, rendered on June 9, 1981, unanimously affirmed.

Judgment, Supreme Court, New York County, rendered on May 12, 1981, unanimously reversed, on the law, the facts, and in the interest of justice, and the indictment dismissed.