■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DWIGHT CRUDUP, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Rubin, J.), rendered July 7, 1981, convicting him of robbery in the third degree, after a nonjury trial, and imposing sentence. The appeal brings up for review the denial of his motion to set aside the verdict and dismiss the indictment. ¶ Judgment reversed, on the facts and as a matter of discretion in the interest of justice, indictment dismissed and this case is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. ¶ Defendant was indicted for one count of robbery in the first degree, and two counts of robbery in the third degree. He was charged with the robbery of a "Photomat booth" located at 69th Road and Queens Boulevard attended by Barbara Pulling at approximately 2:45 P.M. on October 3, 1979, the robbery of a photo supply store, located at 118-15 Queens Boulevard attended by Elizabeth Pulling, Barbara Pulling's sister, at approximately 4:00 P.M. on October 3, 1979, and the robbery of that same booth, which was then attended by Barbara Pulling, at approximately 5:30 P.M. on December 10, 1979. After a nonjury trial, defendant was acquitted of the October 3 robberies and convicted of the December 10 robbery. ¶ The testimony at the trial revealed that at approximately 2:45 P.M. on October 3, 1979, a man approached Barbara Pulling's booth and handed her a note which read "Give me the money or I'll blow your head off". She had an adequate opportunity to see the perpetrator. At approximately 4:00 P.M. on that same day, a man entered Elizabeth Pulling's store, and, after displaying a gun, demanded money. Her opportunity to observe the perpetrator, although limited because the store may have been dimly lit, was also adequate. That evening, both Pulling sisters went to the precinct and selected photographs of the perpetrator. At the trial, Barbara Pulling testified that she told the police that the photograph she selected "looked like the guy who held me up, but I wasn't one hundred percent sure. It was close but not quite". However, at a hearing in Criminal Court, she testified that she saw defendant's picture. Subsequently, the police learned that the photographs selected by the Pullings could not have been that of the perpetrator. ¶ On December 10, 1979, a man again approached Barbara Pulling's booth, handed her a note, and said, "You know what to do". According to Barbara Pulling, the perpetrator was wearing a plaid beret-type hat. On December 11, she saw defendant loading groceries into a van at a nearby supermarket. She testified that he was wearing a plaid beret-type hat similar to the hat worn by the perpetrator on December 10. However, when she notified the police on December 12, she told them that defendant "resembled the person who had held me up". Defendant was subsequently arrested. At the trial, Barbara Pulling identified him as the man who

robbed her on October 3, 1979. ¶ Defendant presented two separate alibi defenses. With regard to the October 3 robberies, he testified that he left his job at a trucking company in South Kearny, New Jersey, shortly after 2:00 P.M., bound for Williamsburg, Brooklyn, in order to pick up his father from work. His father's automobile was in a repair shop that week. Defendant claimed that at 2:45 P.M. he was en route to Brooklyn from New Jersey, and at 4:00 P.M., he met his father in Williamsburg. This testimony was corroborated by three alibi witnesses, viz., defendant's former supervisor at the trucking company, his commuting partner and his father. ¶ With regard to the December 10 robbery, defendant testified that he began working as a delivery man for a supermarket on that day. The supermarket is located about 40 feet from Barbara Pulling's booth. Defendant contended that between 5:00 P.M. and 5:45 P.M., he was on the supermarket floor, except for a short period when he went to the bathroom. This testimony was corroborated by three separate alibi witnesses, including the supermarket manager and two other delivery men. Defendant conceded that there are two exits to the street from the rear of the supermarket. However, one of defendant's co-workers testified that these exits were "manager property". In addition, although one of the alibi witnesses testified that it was plaid, defendant contended that the hat he wore on December 11 was black or dark blue. After reviewing the evidence, we conclude that defendant's guilt was not proven beyond a reasonable doubt. Therefore, we reverse the judgment of conviction and dismiss the indictment. ¶ The identification evidence submitted by the prosecution in this case was extremely weak. Barbara Pulling initially selected a photograph which the police ascertained was not that of defendant and could not have been that of defendant because he had never been arrested. She saw defendant the day after the December 10 robbery, on December 11, and paid particular attention to his hat, which was similar to the one worn by the perpetrator. However, she did not notify the police until she saw defendant again on the next day, December 12. This evidence contrasts with the strong alibi evidence submitted by defendant that he was in the supermarket when the robbery occurred. ¶ Moreover, defendant presented a credible alibi defense that he could not have committed the October 3 robberies because he was driving from New Jersey to Brooklyn at 2:45 P.M. and was in Brooklyn at 4:00 P.M. The Trial Judge obviously believed defendant's alibi, and acquitted him of the October 3 robberies. However, Barbara Pulling identified defendant as the perpetrator of both robberies. The perpetrator used the same *modus operandi* on December 10 as he did on October 3, to wit, passing a note, and, as he gave her the note on December 10, he stated "You know what to do". The implication from this evidence is that the same man committed both robberies. Since defendant could not have committed the October 3 robbery of Barbara Pulling, it is obvious that he did not commit the December 10 robbery. "There can be no greater miscarriage of justice than the conviction of an innocent person as a result of mistaken identification" (*People v McCann,* 90 AD2d 554). We believe that the case at bar presents a classic case of an innocent man convicted as a result of mistaken identification. Hence, defendant's guilt was not proven beyond a reasonable doubt, the judgment should be reversed, and the indictment dismissed. ¶ Even assuming that the guilty verdict was not against the weight of the evidence in the legal sense, pursuant to our interest of justice jurisdiction (CPL 470.15, subd 3, par [c]) we would reverse the judgment and dismiss the indictment because the evidence in this case leaves us "with a very disturbing feeling that guilt has not been satisfactorily established; that there is a grave risk that an innocent man has been convicted" (*People v Kidd,* 76 AD2d 665, 668, application for lv to app dsmd 51 NY2d 882; *People v Mitchell,* 99 AD2d 609). ¶ In light of our determination on this appeal, we need not

reach defendant's claim that the trial court erred in denying his motion to set aside the verdict based on newly discovered evidence and to dismiss the indictment in the interest of justice pursuant to CPL 210.40. Thompson, J. P, O'Connor, Weinstein and Lawrence, JJ., concur.