■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM PAYNE, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Pesce, J.), rendered May 22, 1987, convicting him of robbery in the third degree and grand larceny in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain identification testimony.

Ordered that the judgment is reversed, on the law, the facts and as a matter of discretion in the interest of justice, that branch of the defendant's omnibus motion which was for suppression of identification testimony is granted, the indictment is dismissed and the matter is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

The defendant's conviction arises out of an incident which occurred on August 13, 1986, on Avenue X in Brooklyn, at approximately 9:30 P.M. The perpetrator snatched the complainant's gold link chain and fled. The chain necklace, according to the complainant, contained 2 charms, 1 which said "Sweet 16", and the other of which said "Number One Daughter".

With respect to that branch of the defendant's motion which was for suppression of identification testimony, the record indicates that the complainant was unable to make a photographic identification immediately after the robbery. The next day she went to the precinct and made a positive identification from a photo array, of an individual, other than the defendant, who closely matched the description she had given to police immediately following the incident. Specifically, the complainant described her assailant as 5 feet 7 inches, dark skinned and 150 pounds. The defendant is 6 feet 1 inch, light skinned, heavy set and has a five-inch scar on his face.

On August 28, 1986, the detective in charge of the investigation went to the complainant's home with an album of photographs and sought another photographic identification. Although the detective did not tell the complainant which photograph to select, he told her that the man she had previously selected was not her assailant, and directed her attention to a two-page array containing eight photographs, which included the defendant's photograph and excluded the

photograph of the man she had previously selected. This photo array was not provided at the *Wade* hearing. After selecting the defendant from this photo array, the detective told the complainant that the defendant was the perpetrator. At a subsequent lineup the complainant also selected the defendant. However, the detective had advised the complainant that the man she had selected from the second photo array would be in the lineup and concededly made no effort to locate the individual the complainant had selected from the first photo array, because he couldn't "follow up on every similarity". Under the circumstances, it is our view that the August 28, 1986 photographic identification procedure and the subsequent lineup procedure were both impermissibly suggestive *(People v Scatliffe,* 117 AD2d 827; *People v Tindal,* 69 AD2d 58; *People v Wilson,* 111 AD2d 940; *People v Jerome,* 111 AD2d 874).

Once a pretrial identification procedure is shown to be impermissible and improper, any in-court identification is not to be received in evidence, unless the People prove by clear and convincing evidence that it is of independent origin, i.e., "based upon observations of the suspect" other than the tainted pretrial identification *(People v Ballott,* 20 NY2d 600, 606). In the instant case, the People failed to meet that burden in view of the fact that the only lighting at the crime scene was provided by lights from a baseball field, 45 feet away and the complainant saw the perpetrator very briefly, since he ran up from behind her and then immediately ran away.

In the absence of a valid in-court identification by the complainant, the only other incriminating evidence against the defendant was supplied by one Eric Carter. Carter testified that on August 13, 1986, at approximately 10:00 P.M., he saw the defendant wearing a gold link chain containing 7 charms, 1 of which said "Sweet 16". However, Carter's description of the chain worn by the defendant did not exactly match the complainant's description of her stolen chain with regard to the number of charms thereon, and his credibility was seriously impeached by disclosures concerning his prior criminal record as well as his use of marihuana on the night in question. Moreover, an additional disturbing facet of the instant case is the gross disparity between the physical description of the perpetrator given by the complainant to the police and the defendant's actual appearance. The aggregate of all these factors lead us to believe that "the case at bar presents a classic case of an innocent man convicted as a

result of mistaken identification" *(People v Crudup,* 100 AD2d 938, 939). Since the defendant's guilt was not proven beyond a reasonable doubt, the judgment should be reversed and the indictment dismissed. Even assuming that the guilty verdict was not against the weight of the evidence within the meaning of CPL 470.15 (5), pursuant to our interest of justice jurisdiction *(see,* CPL 470.15 [3] [c]), we reverse the judgment and dismiss the indictment "because the evidence in this case leaves us 'with a very disturbing feeling that guilt has not been satisfactorily established; that there is a grave risk that an innocent man has been convicted' " *(People v Crudup, supra,* at 939, quoting from *People v Kidd,* 76 AD2d 665, 668).

In light of our determination on this appeal, we need only briefly note that the court additionally committed reversible error when, in response to a jury note expressing an inability to reach a unanimous vote, and in the absence of the defendant and his counsel, it instructed a clerk to advise the jury to continue deliberations *(People v Torres,* 72 NY2d 1007; *People v Mehmedi,* 69 NY2d 759; *People v Ciaccio,* 47 NY2d 431). Mollen, P. J., Mangano, Brown and Harwood, JJ., concur.