OPINION OF THE COURT
Per Curiam.
Judgment of conviction rendered June 23, 1994 reversed, on the facts, and as a matter of discretion in the interest of justice, and the accusatory instrument is dismissed.
Defendant was convicted, after a bench trial, of menacing in the third degree (Penal Law § 120.15) and attempted criminal possession of a weapon in the fourth degree (Penal Law §§ 110.00, 265.01 [2]) in connection with an altercation stemming from a long-standing housing dispute with the complainant, the managing agent of the building in which defendant resides. It is alleged that on the afternoon of November 12, 1992, defendant threatened the complainant with a knife — a knife never recovered or produced — in a common area of the residential building.
While all witnesses testified to the occurrence of an argument between the two disputants, the circumstances attending the incident were vigorously contested at the single session trial held on December 3, 1993. The complainant testified that he was conversing with two building residents — identified by him as Herman Greenstein and Freddie Swenson — while he was replacing a light switch on the fifth floor hallway, and that he inadvertently shut off the electricity for the building’s fourth floor on which defendant’s unit is located. Defendant immediately ran up the stairs and approached the complainant "in a screaming fit of rage”, and from "out of nowhere” pulled a knife and held it close to the complainant’s throat "for an instant” before the complainant was able to run away and find refuge in a nearby public bathroom. The complainant eventually called the police, who are said to have responded to the scene later that day, but were unable to locate the defendant. (Neither the unnamed responding police officer[s], nor the tape of the complainant’s 911 telephone call was produced by the People at trial.)
The defense accounts of the underlying incident portrayed a far different scenario than that described by the complainant. The defendant, then a 32-year-old college graduate with no prior criminal record, acknowledged that he questioned the complainant about the electrical failure in his room (which had lasted for about an hour), but flatly denied that he *906 brandished or was carrying a knife. Defendant stated that the encounter ended without violence when he returned to his room after the complainant cursed at him. Defendant further testified that the police responded to the building premises on the following day (Nov. 13, 1992) in response to a 911 call that he had made to report the complainant for recurrent acts of "harassment”, and that his (defendant’s) arrest followed a brief conversation between police and the complainant.
Freddie Swenson, a fellow tenant in the building who was subpoenaed to testify by the District Attorney but who ultimately was called as a defense witness, stated that although there had been a "confrontation” in the fifth floor hallway between defendant and the complainant, he (Swenson) did not see defendant hold or use any weapon.[1]
On January 20, 1994 after rendition of the guilty verdict but before sentence was imposed, the trial court directed the prosecutor to conduct a "further investigation” of the case, based upon the singularly "unusual” nature of the defendant’s presentence report. The Probation Department report (a copy of which has been transmitted to this court) recited in painstaking detail the underlying facts of this case and the prior course of dealings between the two antagonists, chronicling repeated acts of "harassment” committed by the complainant against defendant. The report concluded by expressly "question[ing] this [defendant’s] guilt” and by recommending that the evidence be "re-examined” by the court before any further decision be made.
On the next adjourned date (Feb. 8, 1994), after the prosecutor stated his view that no further investigation was warranted, the court refused to sentence defendant on a presentence report "of this magnitude” ("I [have] never seen a probation report saying anything like that”), and invited defense counsel to bring on a "motion of some kind.” The minutes of February 8 also reflect the trial court’s concern over the possible implications of defendant’s (thén) recent *907 acquittal on separately tried, but related misdemeanor assault and robbery charges involving this same complainant.[2]
The defendant’s subsequent CPL 330.30 motion was denied, the trial court (appropriately) concluding that although the findings contained in the presentence report "raised questions about the defendant’s guilt”, they did not constitute "newly discovered evidence” within the meaning of CPL 330.30 (3). Defendant was sentenced to a conditional discharge on June 23, 1994, and this appeal from the judgment of conviction ensued.
As indicated, the only probative account of the incident offered by the prosecution was the complainant’s own unsubstantiated testimony that defendant displayed and threatened him with a knife "for an instant”, in the immediate view of two building residents who were known to and familiar with both disputants. Neither eyewitness was called to testify by the prosecution, although each apparently was available; one eyewitness (Swenson) testified for the defense, and offered an exculpatory account of the defendant’s involvement in the incident.
Although the prosecution evidence was legally sufficient from a technical standpoint and the verdict may not have been against the weight of the evidence in the accepted legal sense (see, People v Bleakley, 69 NY2d 490), we think this is an appropriate case to exercise our unique statutory authority to reverse the conviction in the interest of justice (CPL 470.15 [3] [c]), particularly given the trial court’s own expressed misgivings generated by both the "unusual” presentence report issued in this case and the decidedly unsuccessful prosecution of the parallel charges brought against defendant. "[0]n balance, we are left with a very disturbing feeling that guilt has not been satisfactorily established; that there is a grave risk that an innocent man has been convicted; and that we should *908 therefore not let this conviction stand.” (People v Kidd, 76 AD2d 665, 668, lv dismissed 51 NY2d 882.)
Parness, J. P., McCooe and Freedman, JJ., concur.

. Herman Greenstein, the second eyewitness identified in the complainant’s testimony, was neither subpoenaed nor called as a trial witness by either side. Greenstein did submit, however, a sworn affidavit in support of defendant’s posttrial CPL 330.30 motion, unequivocally stating that he "never” saw defendant threaten the complainant with a knife or otherwise on November 12, 1992 "or on any other day”.

. The companion assault and robbery charges stemmed from putative conduct which the District Attorney, in an unsuccessful pretrial motion for consolidation, had argued was so closely related in time and substance with the conduct here alleged as to form a "common scheme or plan”. In a sharply worded written decision dismissing the companion assault and robbery counts after a bench trial, Criminal Court (Laura Jacobson, J.) stated that the complainant "unjustifiably provoked [the defendant] in a cruel and insensitive fashion” and "continuously tried to and did, in fact, push the defendant to the limits by initiating a physical confrontation.” Judge Jacobson concluded that the evidence presented to her "clearly established that if anyone is guilty of a crime, it is the complaining witness, whose actions so obviously were intended to harass, annoy and alarm the defendant.”