OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant has been charged in two counts with murder in the second degree (Penal Law § 125.25 [1], [2]) and criminal possession of a weapon in the second degree (Penal Law § 265.03 [1]). The court inspected the Grand Jury minutes to determine the legal sufficiency of the evidence to support these charges (CPL 210.30 [1]; 210.20 [1] [b]). Upon such inspection, the court finds the legal instructions given to the Grand Jury inadequate (CPL 210.35 [5]).
The evidence before the Grand Jury showed that the defendant worked in a karaoke club in lower Manhattan. In the rear of the club was a mahjongg table and slot machines. The evidence also showed that the defendant slept in a room at the club and kept a gun in the room. At about 6:00 p.m. on a Saturday two men entered the club and started an argument about money missing from the slot machines. The men demanded to know to what gang those present in the club belonged. The men stated that they were "Tong On”. The evidence showed that the defendant confronted the two men and when one of the men reached into his coat, the defendant shot the man seven times. There was evidence that the defendant also fired a shot at the second man as he ran from the club. The defendant was arrested at the scene after a brief struggle with a police officer during which the defendant dropped a duffle bag. Initially he denied the shooting, and named another person as the shooter. Eventually, after a .38 caliber gun and ammunition including a 9mm clip was found in the bag which also contained the defendant’s passport, he confessed. Spent .38 caliber shells were found at the scene near the slot machines. A 9mm pistol was found under a couch in the karaoke room.
The defendant testified before the Grand Jury that when he heard the two men arguing with other club employees about the missing money, he heard one of them say that they were going to kill someone in the club if the money was not returned. He testified that when the argument became heated, he was "very scared” and went to his room to get his gun. He returned to the room where the men were arguing. He testi *709 fied that the men stood, side by side between him and the front entrance to the club, and that the rear entrance led to a blind alley. He told the men that if they would tell him "where they came from” he would tell his boss to pay the money. The men said they were "Tong On”, a gang the defendant recognized as having a "bad” reputation for murder, extortion and kidnapping. The defendant testified that he was afraid that if he did not pay them, the men would kill him. The men said that they wanted the money "right now”. One of the men said that if the defendant did not have any money, the man was going to kill somebody from the club. The defendant testified that the man pulled his jacket to the side and the defendant saw what he believed to be a gun handle. Defendant pulled his gun and fired twice without looking at the man. As the man approached him, the defendant continued to fire until the man fell. The other man ran. He denied chasing after and firing at the other man. The defendant also denied trying to flee, and denied possessing the bag that contained the gun.
Because the evidence before the Grand Jury included statements by the defendant that he acted to protect himself from the imminent use of deadly physical force, the Assistant District Attorney correctly chose to charge the justification defense codified in Penal Law § 35.15 (2) (a) to the Grand Jury. (People v Valles, 62 NY2d 36, 38; People v Goetz, 68 NY2d 96, 106.) However, despite the defendant’s statement that he believed that he would be injured unless he gave the men the money they demanded, the Assistant District Attorney chose not to charge the justification defense codified in Penal Law § 35.15 (2) (b) based on the use of deadly physical force to avert a robbery (cf., People v Goetz, supra, 68 NY2d, at 106).
The prosecutor’s decision was based on his evaluation that the victim’s conduct amounted to extortion, but not to robbery. The distinction between robbery and extortion is often a fine line, defined by the threat of immediate or of future injury. Under the former Penal Law, where the threat was one of physical injury, robbery and extortion were the same crime (People v Woods, 41 NY2d 279, 281). Under current law, a person commits robbery when he resorts to a threatened or actual immediate use of physical force to induce the surrender of another person’s property (Penal Law § 160.00). The law does not require any particular form of words to convey a threat of immediate use of physical force, but the threat may be implied from the person’s conduct, taken in context and as *710 a whole (People v Woods, supra, 41 NY2d, at 282). Whether a person is legally justified in using deadly force to resist an attempted robbery therefore depends on an evaluation whether, under the circumstance known to the actor, the actor reasonably believed that the victim was about to use immediate physical force to compel the surrender of the actor’s property, and that the use of deadly force was necessary to avert the robbery (Penal Law § 35.15; People v Goetz, supra, 68 NY2d, at 106; see, e.g., Matter of Jesse C., 145 AD2d 557, 558 [2d Dept 1988]).
Where the evidence would support a finding that the defendant was justified in using deadly physical force either to resist the imminent use of deadly force (Penal Law § 35.15 [2] [a] ) or to avert an attempted robbery (Penal Law § 35.15 [2] [b] ), a trial court must instruct the jury on both theories of justification. The distinction between the two theories of justification may be critical, since the defendant justifiably may use deadly physical force to resist a robbery attempt even though the victim has threatened the immediate use only of physical force, and not of deadly physical force, to compel the surrender of the property. If a trial court in such a case instructs on the former and not on the latter theory, reversal is required without exception (People v Flores, 75 AD2d 649 [2d Dept 1980]; People v Huntley, 87 AD2d 488, 494 [4th Dept 1982], affd 59 NY2d 868). Before the Grand Jury, failure to furnish a complete instruction renders the proceeding defective at least where the evidence indicates that, had the instruction been given, there is a reasonable possibility no indictment would have been returned. (People v Valles, supra, 62 NY2d, at 38; People v Calbud, Inc., 49 NY2d 389, 397; see, People v Melendez, 155 Misc 2d 196, 198 [Sup Ct, Kings County 1992].)
Under the evidence presented to the Grand Jury in this case, the court finds that the defendant’s statements to the Grand Jury presented a basis for finding justification upon either theory. The defendant not only testified that he believed that the two men might kill him, he also testified that just prior to one of the men reaching toward what the defendant believed was a gun handle, the man threatened to "kill someone” if they didn’t get the money "right now”. Critically, no gun was recovered from the body of the deceased. Consequently, the threatened use of immediate physical force by the two men to compel the defendant to give them money may have been decisive in the Grand Jury’s evaluation of the case. *711 Under these circumstances, the court finds that the omission to charge justification based on the defendant’s belief that he was the victim of a robbery requires that the murder counts of the indictment be dismissed and re-presented with an expanded justification charge.
The court is not required to dismiss the count of criminal possession of a weapon in the second degree, since justification is not a defense to that charge. (People v Pons, 68 NY2d 264, 267; People v Almodovar, 62 NY2d 126.) The evidence established that defendant contemplated the use of the weapon at some time in the future, from the moment he came into possession of the weapon.