POOLER, Circuit Judge,
concurring in part and dissenting in part:
I join the majority opinion fully as to Parts 2 and 3. I respectfully dissent as to Part 1, Antico’s challenge to the sufficiency of the evidence. That Antieo was engaged in a conspiracy to commit a crime, I have no doubt. The trial evidence demonstrated unequivocally that he was involved in a conspiracy that had as its object divesting Gulinello of his money. But the evidence that the crime Antieo contemplated committing against Gulinello was robbery within the meaning of New York Penal Law § 160.10(1) was much scarcer — so scarce that, even in light of the “exceedingly deferential standard of review,” United States v. Hassan, 578 F.3d 108, 126 (2d Cir.2008), his conviction cannot be sustained.
Though the majority repeatedly characterizes the wiretaps as demonstrating that Antieo conspired to “rob” Gulinello, e.g., Maj. Op. 83, 87, at most they demonstrate that Antieo conspired to commit a crime— not that the contemplated crime was robbery as it is defined by the New York Penal Law. As the majority recognizes, “[p]roof that the defendant knew that some crime would be committed is not enough.” United States v. Friedman, 300 F.3d 111, 124 (2d Cir.2002). Rather, “[e]harges of ... conspiracy ... require the Government to prove, beyond a reasonable doubt, that the defendant knew the specific nature of the conspiracy or underlying crime.” Id. It is proof that the specific nature of the crime Antieo conspired to commit was New York robbery which is lacking in this case.
To my mind, the only evidence, meager though it is, that connects Antieo to a conspiracy to rob Gulinello, as opposed to a conspiracy to commit any of a number of other crimes against him, is the July 16, *90 2008, conversation in which Antico asked Barrafato if he was “gonna rob anybody.” App. 56. The majority concludes that, in light of the other evidence, a “rational juror ... could reasonably have viewed th[is] conversation as referencing Barrafato’s delays in robbing Gulinello and reflecting the two men’s agreement to rob Gulinello within the meaning of New York Penal Law §§ 160.10(1) and 105.10.” Maj. Op. 87. I fail to see how this is so. Conspiracy to commit robbery under Sections 160.10(1) and 105.10 requires proof that, inter alia, a defendant conspired to “forcibly steal[] property.” N.Y. Penal Law § 160.10(1); id. § 105.10. Under New York law, “[a] person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person.... ” Id. § 160.00. No evidence presented in this case allowed a rational juror to conclude that Antico conspired to “use[ ] or threaten[ ] the immediate use of physical force” against Gulinello in order to take his property. As Antico notes in his briefing, even within the universe of crimes, the word “rob,” as it is commonly used, may mean “burglarize” or simply “steal,” neither of which necessarily requires the use or threat of force under New York law. See N.Y. Penal Law §§ 140.20 et seq. (defining burglary); id. §§ 155.00 et seq. (defining larceny); Appellant’s Br. 32-33. That Antico asked if Barrafato was going to “rob” someone is not proof beyond a reasonable doubt that he was conspiring with him to use or threaten immediate physical force against Gulinello.
Put another way, robbery, as it is defined by the New York Penal Law, is a term of art. Without some evidence in the record supporting the conclusion that Anti-co’s use of it encompassed the elements that make up that crime under New York law, reliance on it alone to prove Antico conspired to commit that crime — and no other — cannot be sustained. The government was obligated to give the jury something to support the conclusion that Antico conspired to rob Gulinello within the meaning of Section 160.10(1), rather than merely to “rob” him in any one of the sorts of other ways a person can be divested of his or her money without the use or threat of force. If, for example, Barrafato had referenced the use of force against Gulinello in discussing the plot, even if not to Antico, the jury’s conclusion that Antico conspired to rob Gulinello within the meaning of Section 160.10(1) might be better supported. But the word “rob” is not a magic incantation; a solitary colloquial use cannot suffice as proof beyond a reasonable doubt that the speaker intends every part of its specialized meaning. The record here is empty of any context that could allow the jury to conclude that Anti-co did, in fact, conspire to commit robbery as it is defined by Section 160.10(1).
The majority’s reliance on the Coney Island car ride is similarly unavailing. Even assuming it constituted evidence of a threat of force, at most it was evidence of a threat of future, rather than immediate harm. Under the New York Penal Law, “[t]he obtaining of property by means of a threatened physical injury in futuro is no longer robbery, but larceny by extortion.” People v. Woods, 41 N.Y.2d 279, 281, 392 N.Y.S.2d 400, 360 N.E.2d 1082 (1977). Compare N.Y. Pen. Law § 155.05(2)(e)(i) (“A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will ... [clause physical injury to some person in the future.... ” (emphasis added)), with N.Y. Penal Law § 160.00 (“A person forcibly steals property and commits robbery *91 when, in the course of committing a larceny, he uses or threatens the immediate use of physical force.... ” (emphasis added)); see also People v. Chung-Li Wang, 164 Misc.2d 707, 625 N.Y.S.2d 413, 414 (NY.Sup.Ct.1995) (“The distinction between robbery and extortion is often a fíne line, defined by the threat of immediate or of future injury.”). Nothing about the car ride, “intimidating,” Maj. Op. 87, though it may have been, constituted evidence of an intent to subject Gulinello to force or to the threat of the immediate use of force. At worst, it was a threat of the future use of force, which under New York law is evidence of extortion, rather than robbery — the former crime being abandoned by the majority as a means of upholding Antieo’s conviction. But adding a modicum of evidence that Antico intended to extort Gulinello does not salvage the government’s insufficient case that Antico intended to rob him. Insufficient evidence of one crime and insufficient evidence of another with distinct elements does not somehow combine to form proof beyond a reasonable doubt. The car ride was relevant only insofar as it was evidence Antico was conspiring to commit some crime, but it was not, and could not be, evidence that this crime was robbery.
While the evidence in this case clearly supported a conclusion that Antico intended to commit a crime, it equally supported the conclusion that the crime was one other than “robbery” as defined by Section 160.10(1). And “if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt.” United States v. Glenn, 312 F.3d 58, 70 (2d Cir.2002) (internal quotation marks omitted). Given the slender thread on which this conviction hangs — a single use of the word “rob” as a substitute for any showing of intent as to all the elements of Section 160.10 — I have no trouble concluding that the evidence in this case equally supported a theory that Antico and his associates intended to get at Gulinello’s money in ways other than robbery and extortion, making a theory of legal (if not moral) innocence equally supportable. I must conclude, then, that a reasonable jury would necessarily have entertained a reasonable doubt.
I recognize that such a conclusion is unsatisfying, not least because Antico clearly conspired to commit a crime, and because, given his mob pedigree, the contemplated crime probably involved the use or threat of force. But it does “not satisfy the Sixth Amendment to have a jury determine that the defendant is probably guilty.” Sullivan v. Louisiana, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Because that is the most the government proved in this case, I respectfully dissent.