*197 OPINION OF THE COURT
Theodore T. Jones, J.
As part of defendant Juan Melendez’ omnibus motion, defendant moves for inspection of the Grand Jury minutes and upon inspection dismissal of the indictment.[1]
The motion to inspect the Grand Jury minutes is granted.
Defendant Juan Melendez testified at the Grand Jury. His testimony, in substance, was that he came upon the scene of the incident, and saw a person in civilian clothes fighting with his brother, the codefendant. During the fight the person in civilian clothes took a gun from his side. Whereupon, defendant, believing that his brother was being robbed or assaulted, pushed the person allegedly causing physical injury.
The person fighting with defendant was an undercover police officer making a legitimate arrest. The defendant denied knowing that the person in civilian clothes was a police officer or that he was making an arrest.
The People’s evidence showed defendant’s involvement to be completely different than defendant’s testimony. Thus, an issue of fact for the Grand Jury was presented.
The prosecutor charged the jury with assault in the second degree (Penal Law § 120.05 [3]) and assault in the third degree (Penal Law § 120.00 [1]) and acting in concert, in helping his brother resist arrest (Penal Law § 205.50). The Grand Jury voted a true bill on the two assaults and a no true bill on resisting arrest. The Grand Jury thus found that defendant did not help his brother in resisting a lawful arrest, but defendant intentionally prevented a police officer from performing his lawful duty of calling for assistance.
In the charge, the prosecutor instructed the Grand Jury as to the elements of the crimes, and instructed on "self-defense”. The charge on "self-defense” was totally incomprehensible as applied to the facts related by defendant Juan Melendez. In particular the prosecutor completely failed to give any guidance as to the law where a person defends another in the mistaken belief as to what was occurring to such person.
Totally lacking in this charge are any guidelines as to the law where the person protected is a wrongdoer or initial *198 aggressor. The charge as to self-defense in this situation was confusing and misleading. Even without this error the charge was incomprehensible.
However, not every error in charging requires dismissal (People v Calbud, Inc., 49 NY2d 389). Only when the instruction possibly prejudices a defendant is dismissal warranted (People v Di Falco, 44 NY2d 482, 487-488). Generally, an improper charge or no charge on justification is considered prejudicial (see, People v Karp, 158 AD2d 378, 380-381, revd on other grounds 76 NY2d 1006; People v Albergo, 181 AD2d 682; People v Davis, 119 Misc 2d 1013).
The issue of "possibility” of prejudice centers on whether justification is properly asserted in defense of another, where the intervenor is mistaken as to the fact regarding the necessity for action. If the defense is unavailable, then there was no prejudice by the confusing charge. If the defense is available, then there is prejudice by the charge as given in this case.
Outside of New York the courts are divided on this issue (see, list of cases on both sides in State v Chiarello, 69 NJ Super 479, 486-487, 174 A2d 506, 510). Some courts believe that the defender stands in the shoes of the person being defended. If that person has no justification defense then the intervenor on his behalf has no such right (see, cases cited in Annotation, 71 ALR4th 940, 961-962, 966-967, §§ 6, 8; 2 Wharton, Criminal Law § 128, at 142-143 [14th ed]; 6A CJS, Assault and Battery, § 21, at 348-349; 40 CJS, Homicide, § 108 [a], at 502; 40 Am Jur, Homicide, § 172, at 458-459). The public policy consideration behind this line of cases is that undercover police officers, or successful victims of attack should not be subjected to the perils of being victimized by others.
Other courts feel that whenever the defender of another acts under a "reasonable belief’ that the other needs assistance, the defense is available (see, cases cited in Annotation, 71 ALR4th 940, 962-966, 967-969, §§ 7, 9; 2 Wharton, op. cit., at 142-143; 40 CJS, Homicide, § 108 [a], at 502; 40 Am Jur 2d, Homicide, § 172, at 458-459). The policy of these courts is to encourage "good Samaritans” to intervene whenever appropriate. A policy requiring such "good Samaritans” to accept the risk of mistake is unacceptable, and would discourage legitimate intervention.
The history of this issue in New York is checkered. In People v Maine (166 NY 50), defendant claimed that it was reversible error to permit the prosecutor to introduce into *199 evidence that the person Maine was protecting (his brother) was the initial aggressor. The Court agreed and held that the jury must consider only the "situation as it was when he [defendant] first and afterwards saw it” (at 52). Thus, the Court held that notwithstanding that the party being defended did not have the justification defense available, the intervenor still had such a defense.
In People v Perkins (11 NY2d 195) defendant claimed he was not a second felony offender. Defendant claimed that his manslaughter conviction in North Carolina could not be considered a predicate because North Carolina does not allow the justification defense in defense of another, where the other is the initial aggressor. This it was claimed made North Carolina’s manslaughter conviction not parallel to New York’s. The majority "assumed” this to be the law but rejected defendant’s argument (at 198). The Court held that in looking to whether statutes are parallel you look to the elements of the crime not the defenses. Judge Froessel in an opinion concurred in by Judge Van Voorhis dissented and argued that People v Maine (166 NY 50, supra) required that defendant not be considered a predicate felon.
One month and 5 days after the Perkins decision (supra) the court decided People v Young (11 NY2d 274). The issue in that case as set forth by the Court was "[w]hether one, who in good faith aggressively intervenes in a struggle between another person and a police officer in civilian dress attempting to effect the lawful arrest of the third person, may be properly convicted of assault in the third degree is a question of law of first impression here” (at 274). In answering this question the Court stated "[w]e agree with the settled policy of law in most jurisdictions that the right of a person to defend another ordinarily should not be greater than such person’s right to defend himself. Subdivision 3 of section 246 of the Penal Law does not apply as no offense was being committed on the person of the one resisting the lawful arrest. Whatever may be the public policy where the felony charge requires proof of a specific intent and the issue is justifiable homicide (cf. People v. Maine, 166 N. Y. 50), it is not relevant in a prosecution for assault in the third degree where it is only necessary to show that the defendant knowingly struck a blow” (at 275).[2] The *200 court adopted the theory that the right to defend another is no greater than such other’s right to defend himself/herself. Once again Judges Froessel and Van Voorhis dissented on the basis of People v Maine (166 NY 50, supra).
Neither the Court of Appeals nor appellate courts seem to have addressed this issue since People v Young (11 NY2d 274, supra). Courts outside New York and authors have indicated that New York’s new Penal Law has overruled Young (Commonwealth v Martin, 369 Mass 640, 341 NE2d 885, 892, n 15; Alexander v State, 52 Md App 171, 447 A2d 880, affd 294 Md 600, 451 A2d 664; State v Wenger, 58 Ohio St 2d 336, 340, n 6, 390 NE2d 801, 804, n 6; Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 35, at 93; 7 Zett, New York Criminal Practice 65.3 [1], at 65-27— 65-28; see also, People v Goetz, 68 NY2d 96, 111-112, discussing People v Young and the current law, but not addressing this issue). One Judge in another jurisdiction has reservations whether the current Penal Law overruled Young (see, concurring opn of Judge Teague in Hughes v State, 719 SW2d 560, 565, 71 ALR4th 919, 929, entitled "A Requiem Dedicated to the Kitty Genoveses of this Country”).
Penal Law § 35.15 (1) (b) as is relevant reads as follows:
"A person may * * * use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend * * * a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person, unless * * *
"(b) The actor was the initial aggressor”.
Initially, the court must determine in the context of defense of another, who is the "actor” referred to in Penal Law § 35.15 (1) (b). If the "actor” referred to is the person being defended then Young (supra) has not been overruled. However, if the "actor” referred to in subdivision (b) is the "good Samaritan” intervenor then Young has been overruled and Maine (supra) is possibly the law.
In determining the intent of the Legislature the court has looked to subdivision (2) (a) of Penal Law § 35.15 (the same Penal Law section) for assistance. That section reads as is relevant as follows:
"A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:
"(a) He reasonably believes that such other person is using *201 or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating” (Penal Law § 35.15 [2] [a]; emphasis supplied).
A reading of this section clearly indicated that the "good Samaritan” intervenor is called actor, and the third party being defended is called "others”. Since actor in subdivision (2) refers to the intervenor, the same should be true of subdivision (1).
Further Penal Law § 15.20 (1) (c), as is relevant, reads
"A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact, unless * * *
"(c) Such factual mistake is of a kind that supports a defense of justification as defined in article thirty-five of this chapter.”
The section is broad and covers mistake of fact for the entire article 35, including defense of others. By eliminating mistake of fact from the defense of justification, the Legislature overruled Young (supra). It could not have been the intent of the Legislature to have the word "actor” in Penal Law § 35.15 (1) (b) refer to the person being defended.
The court finds that "actor” refers to the intervenor.
The court must determine what the term "initial aggressor” means in the context of defense of another. Ordinarily, the "good Samaritan” intervenor would be the initiator of the contact between himself/herself and the person struggling with the person being defended. Thus, if "initial aggressor” referred to the contact between intervenor and the person struggling with the person being defended, the justification of another defense would rarely, if ever, be available.
The only conclusion is that "initial aggressor” refers to the initial conflict between the person being defended and the person with whom the third party is struggling.
The meaning of the statute is if the intervenor somehow initiated or participated in the initiation of the original struggle or reasonably should have known that the person being defended initiated the original conflict, then justification is not a defense (see, 40 Am Jur 2d, Homicide, § 172). If the intervenor had nothing to do with original conflict and had no reason to know who initiated the first conflict, then the defense is available.
*202 Since the evidence presented at this Grand Jury presentation raised the issue as a question of fact, the prosecutor was obligated to give an instruction reflecting the law, that the People had to, prima facie, disprove that defendant:
1. Reasonably believed that it was necessary to defend the third party or;
2. Reasonably believed that another was using "unlawful physical force” against the other or;
3. Reasonably believed that physical force was necessary to be used to prevent the other from using force against the third party or;
4. The defendant did not initiate the original force between the third party and another, nor did he have reasonable ground to believe the third party was the "initial aggressor”.
The instruction given did not explain these principles to the Grand Jury and was confusing on this issue. Possible prejudice to the defendant is shown.
The motion to dismiss the indictment is granted, and the indictment is dismissed.
Since the People presented considerable evidence to contradict defendant’s story and show that defendant was not an innocent intervener, but was an active participant in the events leading to the original conflict, the prosecutor is granted leave to re-present the matter to another Grand Jury.
Prior to any representation, the prosecutor shall give 10 days’ notice to the defendant so that he may exercise his rights under CPL 190.50.
For the guidance of both parties, the court finds that the questioning of defendant regarding defendant’s knowledge that the police use a ".38 caliber” weapon is proper and relevant. This goes to the issue whether defendant "reasonably believed” that the force used against his brother was "unlawful.” It is also relevant to the issue, if defendant should have "reasonably” known that the person in civilian clothes was not the aggressor.
The current securing order shall remain in effect for a period of 45 days.

. Codefendant Miguel Melendez has made no written motion for Grand Jury inspection. Absent such written motion the court cannot consider dismissal as to the codefendant (People v Vega, 80 AD2d 867; People v Fanelli, 92 AD2d 573).

. Whether today a "majority of jurisdictions” adopt this view is doubtful. This court’s research indicates that the majority of jurisdictions today do not adopt this view. 40 Am Jur 2d, Homicide, § 172, at 459, takes the position also that "[m]pst” courts do not accept Young (supra).