This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 147
The People &c.,
          Respondent,
        v.
Christopher E. Walker,
          Appellant.

Timothy W. Hoover, for appellant.
Geoffrey Kaeuper, for respondent.

STEIN, J.:

On this appeal, defendant argues that the standard Criminal Jury Instruction on the "initial aggressor exception" to the justification defense misstates the applicable law where defendant claimed that he intervened in an ongoing fight that began in his absence in order to shield a third party from an

- 1 -

unlawful attack.  We agree and, therefore, reverse.

I.

Defendant was charged in an indictment with murder in the second degree after stabbing and killing the victim during a fight between the victim, defendant's brother and defendant's girlfriend that allegedly started at the victim's home, in defendant's absence.[1]  Defendant testified that he was at his own home when his former wife notified him that someone was beating his brother with a hammer at a house down the street.  Defendant grabbed a kitchen knife and went to help his brother, who he found on the victim's porch.  Defendant averred that he ran onto the victim's porch, and tried to break up the fight after he saw the victim -- who was high on cocaine and drunk -- hitting his brother in the head with a hammer.  Defendant claimed that, when the victim turned to hit him and drew back the hammer as if to strike him again, defendant threw up his arm to stop the blow and then swung his arm around, stabbing the victim in the chest. After the victim jumped or fell from the porch, defendant grabbed the hammer and walked home with the others.  Defendant's brother later wrapped the knife and hammer in defendant's bloody shirt and placed them under the stairs leading to defendant's front porch, where the police found them.

Subsequent testing revealed the victim's DNA on the

---

[1] Defendant's brother and girlfriend were charged with manslaughter in the first degree.

handle of the hammer.  In addition, several eyewitnesses testified at trial that defendant's brother and girlfriend were arguing with the victim, that the three of them began physically fighting with each other, and that, shortly afterward, defendant ran onto the victim's porch, leading to a larger scuffle at the end of which the victim staggered and fell off his porch. According to these witnesses, after the three kicked the victim, defendant walked back to his house with blood on his shirt and a knife in his hand.

At the charge conference, Supreme Court indicated that it would, at defendant's request, give a charge on the justification defense.  Defendant then specifically requested that the court read the standard criminal jury instruction on justification, but exclude the portion that addressed the initial aggressor rule, because defendant did not "stand in the shoes of anybody initially involved in the fight."  Alternatively, defendant argued that, if an initial aggressor charge "were to be used at all[, it] should indicate the first person to use deadly force, not offensive force."  In contrast, the People asserted that there was "a fair view of the evidence to show that . . . defendant [was] acting in concert with" his brother and girlfriend, which "makes him accountable as an initial aggressor."

The court reserved decision on the issue, eventually ruling at a subsequent charge conference that the initial

aggressor charge, as then set forth in the criminal jury
instructions, was proper because it was supported by a reasonable
view of the evidence.  The court stated, however, that it would
add language, based upon People v McWilliams (48 AD3d 1266 [4th
Dept 2008], lv denied 10 NY3d 961 [2008]), that where a
"defendant initiated non-deadly force and [was] met with deadly
physical force[,] the defendant may be justified in the use of
deadly physical force.  In that case the term initial aggressor
would be properly defined as the first person in the encounter to
use deadly physical force."  Defendant reiterated his request
that any language regarding the initial aggressor rule be omitted
entirely because he was "concerned as to whether or not there
would be confusion as to which person . . . they need to look at
in terms of being an initial aggressor;" the court again denied
that request.

In summation, the prosecutor argued that the evidence
demonstrated that defendant "brought this butcher knife . . . to
a verbal argument that he had no business being a part of."
Although thereby acknowledging that defendant arrived after the
argument had commenced, the prosecutor described the conflict in
a manner that made it appear as though defendant was acting in
concert with his brother and his girlfriend from the beginning,
characterizing the "circumstances of this argument or
confrontation" as "a three on one.  Three people [20] years
younger than [the victim] on his own porch accosting him."  The

prosecutor repeatedly stated that "no matter how hard [the victim] tried, they just wouldn't leave" (emphasis added), "[the victim] was just trying to get them to leave" (emphasis added), and that "[i]f the defendant would have just left the porch that night, [the victim] would have lived to see another day." The prosecutor also argued that the evidence showed that defendant "and his accomplices" brought the hammer to the victim's house, and asked the jury to consider "[h]ow was it that the defendant and his accomplices came on to [the victim's] porch?"

Thereafter, the court charged the jury on defendant's justification defense, explaining that "[u]nder the law a person may use deadly physical force upon another individual when and to the extent that he reasonably believes it to be necessary to defend himself or someone else from . . . the use or imminent use of deadly physical force by such individual." The court further charged the jury on the initial aggressor rule, stating, as relevant here,

> "Notwithstanding those rules that I just explained, the defendant would not be justified in using deadly physical force . . . if he was the initial aggressor. Initial aggressor means the person who first attacks or threatens to attack . . . Where there is a reasonable view of the evidence that the defendant initiates non-deadly offensive force and is met with deadly physical force, the defendant may be justified in the use of defensive deadly physical force and . . . in such cases the term initial aggressor is properly defined as the first person in the encounter to use deadly physical force . . . A person who reasonably believes that another is about to

use deadly physical force upon him need not
wait until he is struck or wounded.  He may
in such circumstances be the first to use
deadly physical force so long as he
reasonably believed it was about to be used
against him . . . Arguing, using abusive
language, calling a person names or the like
unaccompanied by physical threats or acts
does not make a person an initial aggressor."

The jury acquitted defendant of second degree murder,
but found him guilty of manslaughter in the first degree.
Supreme Court subsequently sentenced defendant to 25 years in
prison, to be followed by five years of postrelease supervision.
The Appellate Division unanimously affirmed the judgment of
conviction (114 AD3d 1134 [4th Dept 2014]), and a Judge of this
Court granted leave to appeal (23 NY3d 1044 [2014]).

II.

It is well settled that, "[i]n evaluating a challenged
jury instruction, we view the charge as a whole in order to
determine whether a claimed deficiency in the jury charge
requires reversal" (People v Medina, 18 NY3d 98, 104 [2011]; see
People v Umali, 10 NY3d 417, 426-427 [2008], cert denied 556 US
1110 [2009]).  Reversal is appropriate -- even if the standard
criminal jury instruction is given -- when the charge, "read
. . . as a whole against the background of the evidence produced
at the trial," likely confused the jury regarding the correct
rules to be applied in arriving at a decision (People v Andujas,
79 NY2d 113, 118 [1992]; see Umali, 10 NY3d at 427).  When the
defense of justification is raised in cases involving deadly

force, "the People must demonstrate beyond a reasonable doubt that the defendant did not believe deadly force was necessary or that a reasonable person in the same situation would not have perceived that deadly force was necessary" (Umali, 10 NY3d at 425). As the trial court properly recognized, the justification defense is not available to an initial aggressor except in circumstances not present here (see Penal Law § 35.15 [1] [b]). However, while the portions of the charge that the court read to the jury regarding the initial aggressor rule were accurate in themselves, defendant correctly argues that the charge, taken as a whole, was confusing and misleading under the circumstances of this case because the court did not go on to explain the manner in which the initial aggressor rule applies when a defendant intervenes in an on-going struggle to protect a third party who the defendant reasonably believes is being unlawfully beaten.

Traditionally, this Court applied an "alter ego rule" to such scenarios, holding that in cases of simple, third-degree assault, an intervenor stood in the shoes of the third-party being assaulted and intervened at his own peril that he was acting under a mistaken belief of fact regarding the lawfulness of the beating (see People v Young, 11 NY2d 274, 275 [1962]). The Court reasoned that the right of a person to defend another was not greater than the right of the third party to defend

himself or herself (see id.).[2]  The Court's decision in Young was

criticized extensively.  In particular, commentators argued that

"a rule of law that an intervener acts at his own peril,

especially if the decision is widely publicized, may well deter

conduct that would actually assist the process of law enforcement

because of the potential intervener's [sic] fear that he may be

mistaken about the facts and therefore may subject himself to

criminal liability" (see Recent Developments, Intervenor Held

Liable for Assault Despite Reasonable Belief That His Conduct

Protected Another from Unlawful Harm, 63 Colum. L. Rev. 160, 168

[1963]).

Shortly after Young was decided, the Penal Law was

revised.  The Commentaries to Penal Law § 35.15 -- written by the

executive director of the Commission on Revision of the Penal Law

and Criminal Code and counsel to the Commission (see 1967

McKinney's Consolidated Laws of NY, Book 39, at iii-iv) --

indicate that the revisions legislatively overruled Young,

stating that if the case "were to be litigated under the revised

provision, a different result would be required" (Richard G.

Denzer & Peter McQuillan, 1967 Practices Commentaries, McKinney's

---

[2]  The People's argument for giving the initial aggressor
charge here mirrored the traditional view of the law.  They
argued that the charge was required because the evidence showed
that defendant was "acting in concert with" his brother and
girlfriend, thereby "mak[ing] him accountable as an initial
aggressor" -- that is, that he stood in the shoes of the two
others involved in the fight, even if he was not initially
present, because he was acting in concert with them.

Consolidated Law of NY, Book 39, Penal Law § 35.15, at 63).

Indeed, as then-Justice Theodore T. Jones recognized in People v

Melendez (155 Misc 2d 196, 201 [Sup Ct, Kings County 1992]), the

Penal Law was further revised to permit a justification defense

to be considered even if the defendant had operated under a

mistake of fact regarding the innocence of the person being

defended, providing that "[a] person is not relieved of criminal

liability for conduct because he engages in such conduct under a

mistaken belief of fact, unless . . . [s]uch factual mistake is

of a kind that supports a defense of justification as defined in

article [35] of this chapter" (Penal Law § 15.20 [1] [c]

[emphasis added]).

        The court in Melendez held that a charge on

justification in the context of the defense of another that is

"[t]otally lacking in . . . any guidelines as to the law where

the person protected is a wrongdoer or initial aggressor . . .

[is] confusing and misleading" (155 Misc 2d at 197-198).

Regarding the potential confusion over the term "initial

aggressor" in the context of defense of another, Melendez

explained that

> "[o]rdinarily, the 'good samaritan'
> intervenor would be the initiator of the
> contact between himself/herself and the
> person struggling with the person being
> defended.  Thus, if 'initial aggressor'
> referred to the contact between [the]
> intervenor and the person struggling with the
> person being defended, the justification of
> another defense would rarely, if ever, be
> available.  The only conclusion is that

'initial aggressor' refers to the initial conflict between the person being defended and the person with whom the third party is struggling" (id. at 201).

This potential confusion over the term "initial aggressor" is precisely the concern that defense counsel referenced when objecting to the charge here.  We agree with the conclusion reached in Melendez, that the standard charge is misleading unless a supplemental charge is given on the meaning of "initial aggressor" in the defense-of-another scenario (see id. at 201-202).  Thus, the jury should have been charged that, in the context of this case, the initial aggressor rule means -- in sum and substance -- that if defendant, as

> "the intervenor[,] somehow initiated or participated in the initiation of the original struggle or reasonably should have known that [his brother, as] the person being defended[,] initiated the original conflict, then justification is not a defense . . . If [defendant] had nothing to do with [the] original conflict and had no reason to know who initiated the first conflict, then the defense is available" (id. at 201).

The failure to give such a supplemental instruction here was not harmless because the evidence does not overwhelmingly demonstrate that defendant was involved in the initiation of the physical confrontation, that he was the first to use deadly physical force, or that he had reason to know who initiated the original conflict (cf. People v Petty, 7 NY3d 277, 285-286 [2006]).  In short, due to the omission of the supplemental instruction regarding the intervenor who innocently comes to the defense of

another who he or she believes is being assaulted, "the instruction did not adequately convey the meaning of ['initial aggressor'] to the jury and instead created a great likelihood of confusion such that the degree of precision required for a jury charge was not met" (Medina, 18 NY3d at 104).

Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed, with leave to the People, if they be so advised, to resubmit the charge of manslaughter in the first degree to a new grand jury (see People v Bradley, 88 NY2d 901, 904 [1996]).

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order reversed and indictment dismissed, with leave to the People, if they be so advised, to resubmit the charge of manslaughter in the first degree to a new grand jury. Opinion by Judge Stein. Chief Judge Lippman and Judges Pigott, Rivera, Abdus-Salaam and Fahey concur.

Decided October 27, 2015