The People of the State of New York, Respondent,
against
Allison Vernick-Chaikin, Appellant.



Appeal from a judgment of the District Court of Suffolk County, First District (Chris Ann Kelley, J.), rendered February 10, 2014. The judgment convicted defendant, upon a jury verdict, of assault in the third degree. The appeal from the judgment of conviction brings up for review (1) so much of an order of the same court dated December 4, 2012 as denied the branch of defendant's motion seeking to dismiss the accusatory instrument in furtherance of justice, (2) so much of an order of the same court dated May 22, 2013 as denied the branch of defendant's motion seeking to dismiss the accusatory instrument on statutory speedy trial grounds, and (3) an order of the same court dated December 17, 2013 which denied defendant's posttrial motion to set aside the jury's verdict and to dismiss the accusatory instrument.




ORDERED that the judgment of conviction is affirmed.
Defendant was charged in a misdemeanor complaint, filed on January 12, 2012, with assault in the third degree (Penal Law § 120.00 [1]). The factual portion of the accusatory instrument alleged that, on or about January 11, 2012, defendant intentionally struck her husband in the head with a baseball bat, causing him physical injury. According to the District Court, a supporting deposition from defendant's husband was filed on April 3, 2012. Defendant thereafter moved to, among other things, dismiss the accusatory instrument in furtherance of justice, which motion was denied by the District Court by order dated December 4, 2012. A superseding misdemeanor information, charging defendant with the same crime (assault in the third degree) based on substantially the same facts, was filed on April 5, 2013. Thereafter, defendant moved to, among other things, dismiss the superseding information on statutory speedy trial grounds, which motion was denied by the District Court by order dated May 22, 2013. 
Following a jury trial, defendant was found guilty as charged. Defendant thereafter moved, pursuant to CPL 330.30, to set aside the jury's verdict and, pursuant to CPL 330.50, to dismiss the accusatory instrument. Defendant contended, among other things, that the court had improperly allowed rebuttal testimony regarding collateral facts, and had delivered an expanded intent charge to the jury which permitted the People to have an alternative theory of prosecution. By order dated December 17, 2013, the District Court denied defendant's posttrial motion. Defendant appeals from the judgment rendered February 10, 2014 convicting her of assault in the third degree.
With respect to the branch of defendant's first pretrial motion seeking to dismiss the accusatory instrument in furtherance of justice, we note that "[t]he discretionary authority to dismiss an [accusatory instrument] in furtherance of justice should be exercised sparingly and only in those rare cases where there is a compelling factor which clearly demonstrates that prosecution of the [instrument] would be an injustice" (People v Sherman, 35 AD3d 768, 768 [2006] [internal quotation marks omitted]; see also People v Clayton, 41 AD2d 204 [1973]). Upon consideration of the circumstances of this case and the factors set forth in CPL 170.40 (1), we conclude that none of the factors, individually or collectively, warrant the extraordinary remedy of dismissal of the accusatory instrument in furtherance of justice (see People v Candelaria, 50 AD3d 913 [2008]; Sherman, 35 AD3d at 768). Consequently, we find that the [*2]District Court properly denied this branch of defendant's first pretrial motion.
With respect to the branch of defendant's second pretrial motion seeking to dismiss the accusatory instrument on speedy trial grounds, we note that the burden was on defendant to show, through sworn allegations, the existence of an unexcused delay in excess of the statutory maximum (see People v Santos, 68 NY2d 859, 861 [1986]; People v Lomax, 50 NY2d 351, 357 [1980]) of 90 days required for prosecuting a class A misdemeanor (see CPL 30.30 [1] [b]). Defendant's sole basis for seeking to dismiss on statutory speedy trial grounds was that the People had not filed a jurisdictionally sufficient accusatory instrument until they filed the superseding information on April 5, 2013, over a year after the commencement of the action, and that, as a result, the People "were not and could not possibly have been ready" until the 90-day period for prosecuting class A misdemeanors had elapsed. However, the record demonstrates that the People effectively converted the misdemeanor complaint to a jurisdictionally sufficient information by the filing of the supporting deposition (see CPL 100.20, 170.65 [1]; People v Douglass, 60 NY2d 194 [1983]; People v Bray, 46 AD3d 1232 [2007]) "[o]n or prior to" April 3, 2012, as indicated by the District Court in its order dated May 22, 2013, and defense counsel conceded in the moving papers that he had received that deposition. Further, the District Court noted in its order that defendant had been arraigned a second time on April 3, 2012. Thus, the sole basis for defendant's speedy trial claim lacks merit. Consequently, we find that the District Court properly denied this branch of defendant's second pretrial motion.
With respect to defendant's contention in her posttrial motion that the court improperly allowed rebuttal testimony, we find that, given the presence of a justification defense in this case, the challenged rebuttal testimony was not collateral since it related to a material issue in the case (see People v Harris, 57 NY2d 335 [1982]; People v Wilson, 297 AD2d 298 [2002]; People v Beavers, 127 AD2d 138 [1987]), i.e., the intent element of assault in the third degree. Once the evidence presented at trial properly placed justification in issue, the People bore the burden of proving beyond a reasonable doubt that defendant was not justified in her actions (see Penal Law §§ 25.00 [1]; 35.00, 35.15; see also People v McManus, 67 NY2d 541, 546-547 [1986]). "Rebutting evidence in such cases means, not merely evidence which contradicts the witnesses on the opposite side and corroborates those of the party who began, but evidence in denial of some affirmative fact which the answering party has endeavored to prove" (Harris, 57 NY2d at 345 [internal quotation marks and citations omitted]; see also People v Alvino, 71 NY2d 233, 248 [1987]). Moreover, "[w]hen evidence directly challenges the truth of what a witness has said in matters crucial to or material to the issues on trial, by no process of reason can it be held to be collateral" (People v Hill, 52 AD2d 609, 611 [1976]). Here, the rebuttal testimony was offered for the purpose of disproving facts set forth by defendant with regard to the very issue that the jury was asked to resolve (see People v Wise, 46 NY2d 321, 328 [1978]; People v Schwartzman, 24 NY2d 241, 246 [1969]). In any event, even if the challenged testimony was not technically of a rebuttal nature, the trial court nevertheless properly permitted its introduction in the interest of justice (see CPL 260.30 [7]; Harris, 57 NY2d at 345-346; People v Medina, 130 AD2d 515 [1987]; People v O'Dell, 111 AD2d 937 [1985]). Consequently, we find that the District Court properly denied this branch of defendant's posttrial motion.

With respect to defendant's contention in her posttrial motion that the court improperly delivered an expanded intent charge, we note that intent is to be considered in light of all of the circumstances and can be formed in a variety of contexts over a period of time or in a brief instant before the commission of an act (see People v Bracey, 41 NY2d 296, 301 [1977]; People v Jackson, 117 AD2d 623 [1986]). In this case, intent was the central issue raised by both parties. Therefore, the court cannot be faulted for delivering the expanded intent charge (see People v Steinberg, 79 NY2d 673, 684 [1992]). It is well settled that in evaluating a challenged jury instruction, the charge must be viewed as a whole against the background of the evidence produced at the trial (see People v Walker, 26 NY3d 170, 174-175 [2015]; People v Medina, 18 NY3d 98, 104 [2011]; People v Umali, 10 NY3d 417, 426-427 [2008]). Here, the court provided [*3]an accurate definition of intent, which mirrored the expanded charge on intent set forth in the New York State Criminal Jury Instructions (CJI2d[NY] Culpable Mental States—Intent; see People v Haardt, 129 AD3d 1322 [2015]; People v Gibbs, 307 AD2d 536 [2003]). Furthermore, despite defendant's contention to the contrary, the expanded intent charge did not unduly focus on the fact that intentional conduct does not require premeditation. Thus, the charge sufficiently explained the required mental culpability and did not confuse the jury regarding the correct rules to be applied in arriving at a decision (see Walker, 26 NY3d at 175; People v Bishop, 117 AD3d 430 [2014]; Gibbs, 307 AD2d 536). Moreover, the court's instructions did not alter a factual allegation contained in the accusatory instrument, inject a new element, or expand or change the theory of the prosecution (see People v Spann, 56 NY2d 469, 473 [1982]; People v Prato, 143 AD2d 205 [1988]; People v Barbaran, 118 AD2d 578 [1986]). As the District Court, under the circumstances presented, properly instructed the jury on the law of intent, we find no error in the court's denial of the branch of defendant's posttrial motion with respect thereto.
Defendant's remaining contentions are either unpreserved for appellate review or without merit.
Accordingly, the judgment of conviction is affirmed.
Tolbert and Brands, JJ., concur.
Iannacci, J.P., dissents in a separate memorandum.
Iannacci, J.P., dissents and votes to reverse the judgment of conviction and dismiss the accusatory instrument, either by granting the branch of defendant's motion seeking to dismiss the accusatory instrument in furtherance of justice, pursuant to CPL 170.30 (1) (g), or, in the alternative, as a matter of discretion in the interest of justice, pursuant to CPL 470.15 (3) (c), in the following memorandum:
Motion to Dismiss in Furtherance of Justice
Among the numerous errors by the trial and motion court, the following are the most egregious:
Both defendant (Allison) and her husband (Kyle) were arrested as a result of the domestic violence incident that occurred on January 11, 2012 at approximately 3:15 p.m. According to defendant's motion papers seeking to dismiss the accusatory instrument in furtherance of justice, Allison was never before involved with the criminal justice system. Additionally, Kyle was able to post cash bail and was released the morning of January 12, 2012. However, Allison was unable to post cash bail and was released in the afternoon of January 12, 2012. On or about March 2012, the charge of assault in the third degree against Kyle was dismissed and he was subsequently awarded custody of their two children. On April 5, 2013, a superseding misdemeanor information was filed and trial commenced in September 2013.
Several pages from a transcript in the Family Court Child Protective Services proceeding that was brought against Allison were annexed as an exhibit to defendant's motion. Therein, on August 1, 2012 (almost seven months after the subject incident occurred), Kyle testified that, while in police custody on January 11, 2012, the day of the incident, he was taken to Huntington Hospital where a CT scan revealed that he had chronic sinusitis. He did not testify that the CT scan showed a fracture. He further testified that he was not examined by an eye doctor nor was he examined by a neurologist. Moreover, in the Family Court proceeding, in addition to ordering defendant to attend various counseling programs, the judge also ordered Kyle to enroll in anger management classes. According to the motion papers, Allison had voluntarily sought diagnostic assessments prior to the completion of the Family Court proceeding.
Thus, here, an analysis of the factors listed in CPL 170.40 (1) indicates that they warrant a dismissal of the accusatory instrument, as this is one those "rare cases where there [are] compelling factor[s] which clearly demonstrate[] that prosecution of the [instrument] would be an injustice" (People v Sherman, 35 AD3d 768, 768 [2006] [internal quotation marks omitted]; see also People v Clayton, 41 AD2d 204 [1973]). As a result, for the reasons argued by defense counsel in defendant's motion to dismiss, as well as those stated above, it was an improvident exercise of discretion for the District Court to have denied this motion (see People v Candelaria, [*4]50AD3d 913 [2008]). Consequently, the branch of defendant's motion seeking to dismiss the accusatory instrument in furtherance of justice should have been granted.
Dismissal as a Matter of Discretion in the Interest of Justice Following the Trial
In any event, this is a case of "he said, she said," without any objective eyewitnesses. Allison maintained throughout the trial that she defended herself against an unprovoked attack. She claims that Kyle spat on her, called her a "stupid bitch," and said that he was going to take care of her once and for all. Some of the photographs that were introduced at trial depicted bruises and scrapes to her hands, and Allison ultimately underwent surgery at St. Francis Hospital to remove debris from her hand.
Moreover, contrary to the allegations raised by the prosecution against defendant, the incident on January 11, 2012 was not premeditated or pre-planned by her. The prosecutor maintained that Allison had lured Kyle into the garage with the intent to hit him and that she had placed the plastic that the painter, Mr. Tufano, had left behind, to cover the crime scene. However, Allison testified that she was not even expecting Kyle to come to the marital residence on that date; his visit to the home was totally unexpected and took Allison by complete surprise. Furthermore, in Kyle's supporting deposition, dated March 23, 2012, he stated the following: "I told her I had a [sic] extra case of bottled water that I wanted to leave in the garage for my children." Yet, he testified at trial that he went into the garage at Allison's request.
Additionally, at trial, the prosecutor called Mr. Tufano as a rebuttal witness, over defense counsel's objection that this violated the collateral evidence rule, to establish that Allison had lured Kyle into the garage with the intent to hit him and placed the plastic that the painters had left on the floor to cover the crime scene. The prosecutor used Tufano's testimony for the purpose of contradicting an affirmative fact put forth by Allison that she had used the plastic to cover items in the garage because of dust. The prosecutor maintained that Allison had lured Kyle into the garage to assault him, used the plastic on the floor to cover up the crime scene and, therefore, her garage was a crime scene. According to the prosecutor, Tufano's testimony supported why the crime scene was set up in a particular way. Furthermore, the trial judge would not direct the jury to disregard the testimony of Mr. Tufano after he testified that he was not licensed to work in Suffolk County, for which he could have been prosecuted, that he was not paid for the job, that he had other employees on the job, that he did not have a contract, and that he did not work on the job after January 3, 2013. All of this amounted to improper bolstering by the prosecution and objections by the prosecutor concerning the fact that Tufano had other employees on the job were sustained by the trial judge. Moreover, the trial judge gave an expanded intent charge.
The jury also heard testimony from Kyle that, on a prior occasion on June 27, 2010, after he had completed work for the show "Extreme Makeover: Home Edition," he went to his mother's house and Allison showed up at the house. Kyle testified that Allison had an altercation with him in front of his mother. Unbeknownst to the trial judge, Kyle's mother was sitting in the courtroom during this testimony. At that point, the trial judge threatened a mistrial, but ultimately did not order it. Kyle's mother did not testify as to that alleged incident. Additionally, the trial judge denied defense counsel's requests for missing witness charges. Kyle was further permitted to testify about another altercation with defendant that occurred on June 4, 2010 outside of Torcellos Restaurant. Kyle denied that Karen, his girlfriend, was in the restaurant that day. He further testified that he knew the restaurant owners and workers very well and stated that the restaurant owner, Mark Tolkin, witnessed the altercation through a big plate glass window. 
After the People rested, defense counsel asked for a missing witness charge as to Mr. Tolkin, which request was denied. However, Mr. Tolkin was then permitted to testify as a rebuttal witness on behalf of the People and he testified about the alleged altercation outside of his restaurant. Thereafter, defense counsel became aware that his firm, the Law Offices of Thomas F. Liotti, LLC, previously had represented Tolkin in a criminal matter in 2010 and 2011. Defense counsel maintained in defendant's posttrial motion to set aside the jury's verdict and to [*5]dismiss the accusatory instrument that the People had failed to disclose their prior prosecution of Tolkin for a bad check, for failure to pay vendors, and for failure to pay sales tax of over $300,000. Defense counsel also asserted therein that this failure to disclose their prior prosecution of Tolkin constituted a violation of the People's Rosario and Brady obligation, which deprived defendant of her right to due process of law and her Fifth Amendment right to confront the witnesses against her.
Although not specifically referenced at trial, the record on appeal also contains the following documents, among others: The arresting officer, Timothy Coan, noted the following on Kyle's arrest report:
"[Kyle] did grab Chaikin-Vernick, Allison off a ladder and threw her to the ground causing scrapes to her hands and pain to same."
The domestic incident report that was filed on behalf of defendant, which was also signed by Coan, indicated the following:
"[Allison] states she was in the garage on a ladder changing a light bulb when [Kyle] came into the garage and grabbed [Allison] off the ladder and threw her to the ground. [Kyle] then got on top of [Allison] and would not get off. [Allison] states she took a bat that was on the floor and hit [Kyle] in the head in an attempt to get [Kyle] off of her."
Allison's "statement of allegations" (written by Officer Coan and signed by both the officer and Allison), dated January 11, 2012, which was annexed to the domestic incident report that was filed on her behalf indicated the following:
"l was in my garage on a ladder trying to change a light bulb when my husband Kyle Chaikin who I am separated from came in grabbed me threw me from the ladder onto the floor and then he got on top of me and would not get off. I was afraid he was going to kill me. I was able to reach for a baseball bat that was nearby and I hit him with it in an attempt to get him off."
Officer Coan also wrote the following "statement of allegations," dated January 11, 2012, for Kyle, which was annexed to the domestic incident report that was filed on his behalf and which Kyle refused to sign:
"I went over to my wifes [sic] house at 528 Caledonia Rd, Dix Hills. Her name is Allison Chaikin-Vernick. I met her in the garage we talked for a while and then I went to change a-3-light bulb for her in the garage. While doing [that] Allison my wife came up to me and hit me in the head with a baseball bat. She then picked up a hammer and came after me. I ran outside and called the police. My wife Allison Chaikin Vernick kept begging me not to call the police."
As noted above, Kyle's supporting deposition, dated March 23, 2012, indicated that he was not lured into the garage but instead he "told her that [he] had an extra case of bottled water that [he] wanted to leave in the garage for [his] children."
Thus, since I am of the opinion that there is "a grave risk that an innocent [woman] has been convicted," this court should reverse the judgment of conviction as a matter of discretion in the interest of justice, pursuant to CPL 470.15 (3) (c) (People v Kidd, 76 AD2d 665, 668 [1980]; see also People v Carthrens, 182 AD2d 460 [1992] [reversing a conviction for criminal possession of a controlled substance in the third degree]; People v Crudup, 100 AD2d 938 [1984] [reversing a conviction for robbery in the third degree]). In Kidd, a one witness identification case, where there was alibi evidence and where the Appellate Division, First Department, was "left with a disturbing feeling of a grave risk that an innocent man ha[d] been convicted," the court reversed a judgment of conviction for robbery in the third degree, for which defendant was sentenced to an indeterminate term of imprisonment of three to nine years, as a matter of discretion in the interest of justice, pursuant to CPL 470.15 (3) (c) (Kidd, 76 AD2d at 668). Relying upon this statutory provision and Kidd, this court has exercised such interest of justice discretion before (see People v Ortiz, 46 Misc 3d 142[A], 2015 NY Slip Op 50181[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2015] [reversing a conviction for violating a Village of Woodbury water restriction ordinance]; People v Bellissimo, 31 Misc 3d 142[A], 2011 NY Slip [*6]Op 50831[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2011] [reversing a conviction for criminal trespass in the second degree]; People v Canner, 2002 NY Slip Op 50527[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2002] [reversing a conviction for failing to keep to the right of a roadway's center lane]).
Alternatively, in light of the above-mentioned trial errors, at the very least, the matter should be remitted to the District Court for a new trial.
Decision Date: August 05, 2016