People v Morales (2018 NY Slip Op 02958)





People v Morales


2018 NY Slip Op 02958


Decided on April 27, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 27, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., CARNI, DEJOSEPH, TROUTMAN, AND WINSLOW, JJ.


373 KA 15-01424

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JOWSHEED M. MORALES, DEFENDANT-APPELLANT. 






DAVISON LAW OFFICE PLLC, CANANDAIGUA (MARY P. DAVISON OF COUNSEL), FOR DEFENDANT-APPELLANT.
JAMES B. RITTS, DISTRICT ATTORNEY, CANANDAIGUA, FOR RESPONDENT. 


 Appeal from a judgment of the Ontario County Court (William F. Kocher, J.), rendered April 15, 2015. The judgment convicted defendant, upon a jury verdict, of rape in the first degree, rape in the third degree, criminal mischief in the fourth degree, harassment in the second degree, criminal contempt in the first degree (two counts), criminal contempt in the second degree (12 counts) and criminal solicitation in the fourth degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law and as a matter of discretion in the interest of justice by reversing that part convicting defendant of harassment in the second degree and dismissing count five of the indictment, and by reducing the sentence imposed for rape in the first degree to a determinate term of incarceration of eight years and a period of postrelease supervision of 10 years, and as modified the judgment is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, rape in the first degree (Penal Law § 130.35 [1]), rape in the third degree (§ 130.25 [3]), and harassment in the second degree (§ 240.26 [1]). The charges arose from defendant's alleged conduct during an intimate relationship with the complainant in early 2014.
In late February of that year, defendant and the complainant had an argument at the complainant's house. The argument became physical. Defendant slapped the complainant, pulled her hair, and snapped her phone in half. He was arrested and briefly jailed, and a six-month, stay-away order of protection was issued. When defendant was released, he and the complainant resumed their relationship despite the order of protection. On April 23, defendant and the complainant had another argument, during the course of which he sent her angry and threatening text messages. The argument subsequently became physical, and defendant punched the complainant in the stomach. The police were called, and defendant was returned to jail. In late April and May, while defendant was in jail, he wrote the complainant several lengthy letters, and the two of them engaged in recorded telephone conversations. In those conversations, the complainant told defendant that he would look "hot" in jail clothes, told him that she had sent him photos of herself in lingerie, and made lewd and extremely graphic remarks suggesting that she desired his company. The complainant also made threatening remarks about defendant's ex-girlfriend, and taunted defendant. "[Y]our fate lives in my hands," she said. "I was going to drop the charges until I found out that you were in bed with another girl while I was at work," she said. "[I]f I did let you out, it's because I feel the need to be with you. I'm not letting you out so you can be with another girl."
In one of the letters that defendant sent to the complainant, he expressed concern about information that he had received from his mother. Defendant had learned that the complainant and his ex-girlfriend had been exchanging hostile messages. In one of those messages, the complainant told the ex-girlfriend that defendant had raped her and that she was going to accuse him of such. Defendant's mother had allegedly seen the messages. Defendant wrote: "I don't [*2]want to believe her [because] I remember you promised me that you wouldn't tell anyone that." The complainant's accusation resulted in rape charges against defendant.
The grand jury proceeding took place over two days. The prosecutor sought to indict defendant on counts of, inter alia, rape in the first degree, rape in the third degree, and aggravated family offenses. To establish the counts charging aggravated family offenses, the prosecutor introduced a certificate of conviction involving a prior charge of sexual misconduct against defendant. An officer of the Geneva Police Department testified that defendant had previously been convicted of sexual misconduct, and the prosecutor instructed the jury that it could consider that conviction only as the predicate conviction required to establish an aggravated family offense, not as evidence of defendant's propensity to commit the crimes charged.
On the second day of the grand jury proceeding, the complainant testified that, on February 17, she and defendant were arguing in her bedroom, and she told him to leave. Defendant dialed 911 on his cell phone and told the complainant to call the police, but she refused. He then undressed her and exposed his penis, but she told him "no" and "smacked him a couple times." Defendant then held her down and sexually penetrated her without her consent. Afterwards, as they were getting ready for work, defendant expressed concern that the complainant would likely tell someone about the incident. She answered that she would not. While they were still in the bedroom, the police came to the front door in response to the 911 call. The complainant told the police that the call was an accident. At the conclusion of the proceeding, the grand jury handed down an indictment charging defendant on all counts presented by the prosecutor.
Thereafter, defendant moved, inter alia, to dismiss the indictment on the grounds that the indictment was not supported by legally sufficient evidence and that the grand jury proceedings were defective. In support of the motion, defendant noted that he had never been convicted of sexual misconduct. Defendant contended that the prosecutor therefore failed to demonstrate that he had been convicted of a predicate offense required to establish an aggravated family offense, and he also contended that the introduction of false evidence of a nonexistent prior sex crime prejudiced the ultimate decision of the grand jury. The prosecutor conceded that defendant had never been convicted of sexual misconduct, but he opposed dismissal of the indictment. County Court reduced those counts charging defendant with aggravated family offenses to the underlying misdemeanors, but it refused to dismiss the indictment.
The matter proceeded to trial. The complainant's testimony was consistent with her testimony before the grand jury. In addition, she testified that she did not tell anyone about the alleged rape, including defendant's ex-girlfriend, and she further testified that she did not get into a "feud" on social media with the ex-girlfriend. On cross-examination by defense counsel, the complainant testified that she and defendant "loved" each other but fought often. She admitted that, in the telephone calls between herself and defendant while he was in jail, she made the lewd and manipulative remarks noted above, but she denied telling defendant's ex-girlfriend that she was going to accuse defendant of rape.
Before the defense put on its case, defense counsel sought to question defendant's ex-girlfriend about her conversations with the complainant via text message and social media. The court ruled that, although the testimony was hearsay, it was admissible as evidence of prior inconsistent statements. The ex-girlfriend then testified that the complainant wrote to her: "I'm going to be accusing [defendant] of rape so that no other females would want him." The prosecutor then cross-examined the ex-girlfriend using screenshots of conversations conducted over social media. The complainant wrote: "I don't care. I don't want to hear. I dumped him. I got over it . . . I don't have time for BS, especially BS that has to do with that stupid fuck . . . I know he's in jail. I put him there . . . He fucked everyone." When asked if defendant had actually raped her, the complainant wrote: "I just don't want to think about him."
Defendant contends that the court erred in charging the jury that prior inconsistent statements are not proof of what happened and can be used only to evaluate the truthfulness or accuracy of the testimony. Defendant also contends that the court erred in charging the jury, in response to a jury note, that its verdict with respect to rape in the first degree was not determinative of its verdict with respect to rape in the third degree, without also charging that its verdict with respect to rape in the third degree was not determinative of its verdict with respect to [*3]rape in the first degree. Defendant failed to preserve those contentions for our review inasmuch as he did not object to either charge on the grounds that he now raises on appeal (see People v Chavez, 75 AD2d 888, 889 [4th Dept 2000], lv denied 5 NY2d 962 [2000]; cf. People v Walker, 26 NY3d 170, 172-173 [2015]), and we decline to exercise our power to review those contentions as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]). Defendant further contends that he was denied effective assistance of counsel, but we conclude that "the evidence, the law, and the circumstances of [this] case, viewed in totality and as of the time of the representation, reveal that [his] attorney provided meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; see People v Keschner, 25 NY3d 704, 722-724 [2015]).
Contrary to defendant's contention, the court properly refused to dismiss the indictment on the ground that the grand jury proceeding was defective. An indictment may be dismissed where the "proceeding . . . fails to conform to the requirements of [CPL article 190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result" (CPL 210.35 [5]; see CPL 210.20 [1] [c]). Dismissal under CPL 210.35 (5) is limited to instances of prosecutorial misconduct, fraud, or errors that potentially prejudice the grand jury's ultimate decision (see People v Huston, 88 NY2d 400, 409 [1996]; People v Elioff, 110 AD3d 1477, 1477 [4th Dept 2013], lv denied 22 NY3d 1040 [2013]). Upon our review of the record of the proceeding, we conclude that the prosecutor did not engage in fraudulent conduct or "conduct so egregious as to impair the integrity of the grand jury proceeding[]" (Elioff, 110 AD3d at 1478). Although the prosecutor should have been able to read and comprehend the certificate of conviction, the record does not establish that he knowingly or deliberately presented false evidence to the grand jury (see People v Bean, 66 AD3d 1386, 1386 [4th Dept 2009], lv denied 14 NY3d 769 [2010]) and, moreover, there is no dispute that the evidence before the grand jury was sufficient to support the indictment as reduced by the court (see generally Elioff, 110 AD3d at 1477-1478). Furthermore, the prosecutor gave an appropriate instruction that limited the grand jury's consideration of the challenged evidence (see People v Davis, 83 AD3d 1210, 1212 [3d Dept 2011], lv denied 17 NY3d 794 [2011], reconsideration denied 17 NY3d 815 [2011]), and the grand jury is presumed to have followed that instruction (see People v Farley, 107 AD3d 1295, 1295 [3d Dept 2013], lv denied 21 NY3d 1073 [2013]; People v Di Fondi, 275 AD2d 1018, 1018 [4th Dept 2000], lv denied 95 NY2d 933 [2000]).
We agree with defendant, however, that the jury may have convicted him of harassment in the second degree based on an unindicted theory. Preliminarily, we note that defendant "was not required to preserve his contention for our review because he has a fundamental and nonwaivable right to be tried only on the crimes charged" (People v Sanford, 148 AD3d 1580, 1582 [4th Dept 2017], lv denied 29 NY3d 1133 [2017] [internal quotation marks omitted]). It is well settled that, "[w]here the court's jury instruction on a particular count erroneously contains an additional theory that differs from the theory alleged in the indictment . . . and the evidence adduced at trial could have established either theory, reversal of the conviction on that count is required because there is a possibility that the jury could have convicted the defendant upon the uncharged theory" (People v Graves, 136 AD3d 1347, 1348 [4th Dept 2016], lv denied 27 NY3d 1069 [2016]; see Sanford, 148 AD3d at 1582). Here, the indictment charged defendant with harassment in the second degree on the ground that, on February 28, 2014, he slapped the complainant with the intent to harass, annoy, or alarm her. Nevertheless, the court instructed the jury that it could find him guilty if he shoved her or subjected her to other forms of physical contact. The evidence at trial could have established either theory. Therefore, that part of the judgment convicting defendant of harassment in the second degree must be reversed (see Graves, 136 AD3d at 1349), and we modify the judgment accordingly. Inasmuch as harassment in the second degree is a mere violation and defendant has already served the sentence imposed on it, we dismiss that count rather than grant a new trial thereon (see People v Flynn, 79 NY2d 879, 882 [1992]; People v Hillard, 151 AD3d 743, 744-745 [2d Dept 2017], lv denied 30 NY3d 1019 [2017]).
We also agree with defendant that the sentence imposed for rape in the first degree is unduly harsh and severe. The alleged incident occurred in the context of an intimate relationship that lasted several months between two otherwise consenting adults who were close in age. The complainant had the opportunity to report the incident to the police immediately after it happened but chose not to do so. In the recorded conversations between defendant and the complainant, which occurred two to three months after the incident, the complainant repeatedly expressed satisfaction with her relationship, and a willingness to use the criminal justice system to gain the [*4]upper hand in it. We note that defendant's history of contacts with the criminal justice system is not extensive, and thus it does not weigh heavily against him.
The record does not indicate that the sentencing court considered any of the above substantial mitigating factors in imposing the sentence. To the contrary, the court expressed only that it wished to impose a sentence for rape in the first degree in excess of the offers made during the plea bargaining process. Indeed, the sentence of 18 years of incarceration is double that of the most recent plea offer. It is well established that a defendant may not be punished for exercising his constitutional right to a trial (see generally Bordenkircher v Hayes, 434 US 357, 363 [1978], reh denied 435 US 918 [1978]). Although a sentence after trial usually will be harsher than a sentence accompanying a prior plea offer (see People v Pena, 50 NY2d 400, 411-412 [1980], rearg denied 51 NY2d 770 [1980], cert denied 449 US 1087 [1981]), a defendant's refusal to plead guilty does not absolve the court of its responsibility to consider appropriate sentencing factors (cf. People v Matthews, 101 AD3d 1363, 1366 [3d Dept 2012], lv denied 20 NY3d 1101 [2013]; People v Blond, 96 AD3d 1149, 1153-1154 [3d Dept 2012], lv denied 19 NY3d 1101 [2012], reconsideration denied 20 NY3d 985 [2012]). Under the circumstances, we conclude that a determinate term of incarceration of eight years and a period of postrelease supervision of 10 years is appropriate,
and we therefore further modify the judgment accordingly.
Entered: April 27, 2018
Mark W. Bennett
Clerk of the Court